# BRUNSWICK REALTY CO. v. UNIVERSITY INV. CO.

No. 2473.   Decided June 4, 1913 (134 Pac. 608).

1. MORTGAGES—CONSIDERATION—EVIDENCE.  In an action upon a mortgage given to secure advances for construction of a building, evidence *held* to show that the mortgagee did not advance all of the money agreed upon, but through an arrangement with the builder it received a bonus or gratuity not agreed to by the mortgagor.  (Page 81.)

2. MORTGAGES—ENFORCEMENT—FAILURE OF CONSIDERATION.  In an action upon a mortgage given to secure advances for construc-

tion of a building, the mortgagee is not entitled to payment for money not advanced to pay the builder but received back as sort of a bonus under a contract with the builder not agreed to by the mortgagor. (Page 84.)

3. MORTGAGES—ACTION—FAILURE OF CONSIDERATION. Where the purchasers of an equity of redemption did not assume payment of the mortgage but merely took the property subject thereto, the amount of the mortgage not being deducted from the price, they can set up a partial failure of consideration for the mortgage, for a purchaser is estopped from setting up the failure of consideration only on the theory that he assumed payment of the mortgage or that it was deducted from the purchase price.[1] (Page 84.)

4. MORTGAGES—FORECLOSURE. In a suit to foreclose a mortgage given to secure advances for construction of a building, the mortgagee who paid for the building operations as they were conducted cannot collect a charge for overdrafts by the mortgagor where at the time of the alleged overdrafts the mortgagor had on deposit thousands of dollars which were not credited to him merely through a fiction of bookkeeping. (Page 87.)

5. TENDER—EFFECT. Where defendant tenders a given amount and pleads his tender, it is a conclusive admission that plaintiff is entitled to recover the amount tendered and judgment should at all events be given for that amount. (Page 87.)

6. COSTS—EFFECT OF TENDER—COSTS AND ATTORNEYS' FEES. Where the purchaser of an equity of redemption tendered more than the amount due upon the mortgage, costs and attorneys' fees expended by the mortgagee in foreclosure cannot be assessed against the land. (Page 87.)

7. MORTGAGES—DISCHARGE OF LIEN OF MORTGAGE—TENDER. A tender, by a purchaser of the equity of redemption, of the amount due under a mortgage will not discharge the lien where there was no assumption of the debt, because as between the mortgagor and the purchaser the mortgage debt is part of the consideration for the conveyance and the land becomes the primary fund for payment. (Page 89.)

8. APPEAL AND ERROR—FINAL DETERMINATION. On appeal in an action to foreclose a mortgage, the Supreme Court will not finally determine the rights of the parties where issues raised were not disposed of in the court below and evidence was not heard thereon. (Page 90.)

[1] Graves v. Seifried, 31 Utah, 203, 87 Pac. 674; Boucofski v. Jacobson, 36 Utah, 165, 104 Pac. 117, 26 L. R. A. (N. S.) 898.

9. MORTGAGES—FORECLOSURE—DEFENSES. A purchaser of the equity of redemption, who did not assume payment of a mortgage, may set up failure of consideration where he does so with the consent of the mortgagors. (Page 90.)

10. USURY—DEFENSES. The defense of usury cannot be set up, in an action upon a mortgage, where the contract was entered into before the usury law became effective. (Page 91.)

APPEAL from District Court, Third District; *Hon. George G. Armstrong,* Judge.

Action by the Brunswick Realty Company against the University Investment Company.

Judgment for plaintiff. Defendant appeals.

REVERSED AND REMANDED.

*Stewart, Stewart & Alexander, M. E. Wilson* and *E. A. Walton* for appellant.

*Dey & Hoppaugh* and *E. McGurrin* for respondent.

FRICK, J.

This is an action in equity. Respondent is the assignee of the Salt Lake Security & Trust Company, hereafter called trust company. It brought the action January, 1910, to foreclose a mortgage originally given for $10,-000. The mortgage in question was payable in monthly installments of $250 each, and it was provided therein that, in case an installment should remain unpaid for a period of thirty days or more, the payee might declare the whole debt due and enforce payment thereof in an action of foreclosure. It is alleged in the complaint that the maker was in default and that when the action was commenced there remained a balance due on the mortgage amounting to $5438.11. There were a number of defendants, some of whom we shall refer to later. The only one that is directly concerned on this appeal is the University Investment Company, hereafter designated appellant. The district court made findings of fact and conclusions of law in favor of respondent for the

amount claimed with interest, and entered a decree of fore-
closure and ordered the mortgaged premises sold, from
which decree this appeal is prosecuted.

The findings of fact, conclusions of law, and judgment are
vigorously assailed by appellant as being contrary to the
evidence and the law. Numerous errors are assigned, and
those that are deemed material will be considered in their
order.

Owing to the great length of the findings of facts we shall
not set them forth here, but shall confine our statement of
the facts to such matters only as are deemed necessary to
a full understanding of the points decided. In order to
avoid unnecessary repetition, we shall state the facts in the
opinion, and so far as possible shall do so in connection
with the point decided.

The controversy arises out of the following transactions:

On the 14th day of March, 1907, the defendant John W.
Carpenter, being desirous of erecting a building upon a cer-
tain lot owned by him, in order to accomplish his purpose,
on that day entered into an agreement in writing with the
trust company aforesaid whereby it was agreed that said
company should "advance to said party of the first part
(Carpenter) the sum of $25,000 towards the erection of the
building aforesaid," and said Carpenter agreed to secure
the payment of said sum of money by executing and deliv-
ering to said trust company a bond and first mortgage on
the lot and building aforesaid for $15,000, payable in five
years, with seven per cent. interest and with the right to
renew the same for another five years, and a second note
and mortgage for the sum of $10,000, payable in sums of
$250 "per month or more," with interest at seven per cent.
"to be adjusted semiannually." In said agreement it was
also provided that said Carpenter "agrees to let the con-
tract for said building to O. M. Engdahl for the sum of
$30,850." On the 18th day of March, 1907, the bond for
$15,000, the note for $10,000, and the two mortgages were
duly executed and delivered by said John W. Carpenter and
his wife, Martha J. Carpenter, to said trust company. The

title to the real estate mortgaged was in Martha J. Carpenter. On the day following John W. Carpenter and said O. M. Engdahl entered into an agreement in writing whereby the latter agreed to furnish the necessary labor and material to erect and complete the building mentioned above, and to do so with the kind and quality of material and according to the plans and specifications prepared by one C. H. Onderdonk, who was the architect that had been agreed upon. In that agreement it was expressly stipulated that the contract price should be paid to the contractor as the "work progressed" on said building, and, in case any differences should arise between the contractor and said Carpenter with respect to the construction of said building, said differences should be adjusted by a referee appointed by the trust company. The $25,000 borrowed and secured by the Carpenters was accordingly placed to the credit of a so-called building fund by the trust company. Carpenter, within a short time thereafter, paid to the trust company to be added to said building fund additional sums of money amounting to over $10,000, and after said payments also from time to time paid other sums of money to said company to be applied as interest on both mortgages and as part payment of the principal sum of the second mortgage. The whole amount paid by Carpenter to the trust company, including the two mortgages, to be applied upon the building contract and as interest, insurance, and sundry expenses, amounted to considerable over $40,000. In view of the conclusions reached, the exact amount thus paid is not material here. The Carpenters were made defendants to this action and they filed an answer in which they in effect averred that the trust company had not advanced the amount of money for said building claimed by it and that the second mortgage, for that and other reasons hereafter set forth, had in fact been fully paid. When the trial opened the respondent dismissed the action as against the Carpenters and it proceeded against the appellant alone.

Appellant's connection with the transactions in question arose as follows: Some time after the building in question

was completed, to wit, on the 13th day of April, 1908, Martha J. Carpenter, in whom the legal title to the lot in question was vested, conveyed an undivided one-half interest therein to Charles B. Stewart by a deed of general warranty for the expressed consideration of "one dollar and other good and valuable consideration." Nothing is said in that deed about any mortgages or other incumbrances on the property conveyed. Thereafter, on the 29th day of May, Martha J. Carpenter and her husband conveyed by deed of general warranty an undivided one-half interest in the mortgaged premises to Priscilla S. Taylor and Katherine R. Stewart. The consideration mentioned in that deed is "$1500." That deed is made "subject" to the mortgages aforesaid. On the 9th day of April, 1909, the grantees named in the two foregoing deeds, together with two others who claimed some interest in the premises, conveyed them by quitclaim deed to the appellant. The consideration mentioned in the deed is "one dollar." There is nothing said in that deed about mortgages or incumbrances of any kind, but it was admitted during the trial by appellant that it took the property "subject to the mortgages." It was further admitted at the trial that the respondent, as the assignee of the trust company, obtained the note and mortgage in question with full knowledge of the claims made by the Carpenters and the appellant and that any defense in this action which could be legally enforced against the trust company was also enforceable against the respondent. Appellant set forth in its answer all of the defenses which were set up by the Carpenters and also pleaded that it, under our statute, had tendered in writing to the trust company, before the assignment of the note and mortgage was made, the sum of $4500, and that that was all and more than was due upon the note and mortgage in suit. This tender was duly proved and relied on at the trial. Really there is very little conflict in the evidence adduced at the trial with regard to what we deem to be the controlling facts.

The real controversy in the case arises in this way:

Mr. Carpenter claimed, and the appellant likewise claimed, that there should have been credited on the mortgage in question much more than was in fact credited thereon. A portion of the credits thus claimed arises out of a sum of $4400 which the appellant and Mr. Carpenter contend the trust company withheld, and thus had not advanced that sum as agreed, but it nevertheless charged Mr. Carpenter with the same. With regard to this matter the president of the trust company, who had charge of the transactions between Carpenter and that company and of the payments that were made to Engdahl, the contractor, on the building contract during the progress of the building and upon its completion, in substance testified that Mr. Engdahl was the contractor, Mr. Onderdonk the architect, and the trust company the lender of the $25,000 which was to be used in the building and to secure which the two mortgages were given; that when Engdahl entered into the contract to erect and complete the building in question he agreed to pay the trust company out of the contract price the sum of $4400; that in compliance with said agreement Mr. Engdahl, on the 19th day of March, 1907, the day after the mortgages were executed and delivered, gave the trust company an order in writing, which was introduced in evidence, for said $4400, which amount was at once charged against the building fund; that Mr. Carpenter had also paid the trust company a commission of $500 for obtaining the loan, and in addition thereto the "bonus" of $4400, as the president called it.

Upon this point the president, in referring to the "bonus," testified: "Engdahl paid us; you see, it (the $4400) was really added to the amount of the contract let to Engdahl." After going over the matter at some length and in attempting to explain the item of $4400, the president was asked the following question which he answered as indicated: "Q. In other words, you wanted the $4000 or $4400 at all events? A. Well, now, I think that is just about what I wanted." The president also testified that

43 Utah—6

Engdahl, as the contractor, was required to pay the trust
company the $4400 out of the $30,850 as a bonus to it and
was likewise to pay a Mr. Birrell a further sum out of said
contract price. Mr. Birrell corroborates this statement in
his testimony. He said: "Eight hundred and fifty (dol-
lars), that is my commission. Carpenter asked me outright
one day. He said, 'Birrell, tell me, what are you getting
out of this building?' I said, 'I am getting eight hundred
and fifty (dollars), John.'" There are vouchers in the
record showing that Birrell got $448 at one time and $450
at another, all of which was taken out of the building con-
tract. There was therefore taken out of the building con-
tract the sum of $4400 as a bonus to the trust company, and
the further sum of $898 as a commission to Birrell, or a
total of $5298, no part of which went into the building.
There was some claim made that Carpenter owed Birrell
some further commissions on some other deal. For the
purposes of this decision we shall assume that Mr. Birrell
was entitled to the money as a commission from Carpenter,
although he testified that it was paid out of the contract
price. It is also contended that the trust company was
really the contractor and that the $4400 was profits arising
out of the contract. The president of the trust company has,
however, exploded this claim. He in express terms testi-
fied that Engdahl and not the trust company was the con-
tractor; that the relation of the trust company to the trans-
action was that of lender and of paymaster in that it was
required to pay out the money loaned with the amount paid
in by Mr. Carpenter as the building progressed, which, ac-
cording to the vouchers in evidence, was done in that man-
ner. He also testified, as we have seen, that the $4400 was
a "bonus," and not profits. But there is other evidence in
the record which conclusively shows that the $4400 could
not have been regarded as profits arising out of the building
contract. As we have pointed out, Engdahl gave the trust
company an order for that amount only four days after he
had entered into the contract to erect and complete the
building and but one day after the mortgages had been exe-

·cuted and delivered and hence before the erection of the building was commenced. To allow that contention, therefore, we must allow a specific sum as profits arising out of a contract for the erection of a building upon which nothing whatever had as yet been done. To do this would be to allow a specific amount as profits upon a contract before any attempt to execute the same had been made. What the profits on such a contract ultimately are depends upon so many contingencies that no human foresight could determine the exact amount in advance.

In a case where the original contractor turns over the contract to a subcontractor at a less figure than the original contract price, the original contractor may receive a fixed sum before the erection of the building is entered upon. But we have no such a case here, as is made clear by the president of the trust company. He was asked the following pointed questions: "He (Engdahl) was not in any sense your subcontractor; that is, the company's subcontractor?" His answer was: "He was the original contractor." There is much more evidence that might be quoted to the same effect. The statements of the president of the trust company are also in entire harmony with every written agreement entered into by the parties, and any other conclusion would be in the very teeth of all those agreements. Again, the trust company had already taken out of the loan a commission of $500, and this, too, for services in lending what we must assume were its own funds. It is beyond all cavil, therefore, that the building contract entered into by Engdahl was "loaded" to the extent of $5298, out of which Birrell received his $898 and the trust company the sum of $4400. Engdahl, therefore, only received $25,552 upon the building contract which, it must be assumed, included his profits, if any, upon the contract. The trust company, therefore, either never advanced the $4400 for the building or kept that sum out of what Carpenter paid into the building fund. The $4400 thus constituted a mere bonus—a gratuity—which was kept by the trust company and for which Carpenter never received anything whatever.

If, therefore, Mr. Carpenter were here claiming that the $4400 should be credited upon the mortgage in question, we cannot see how a court of equity could deny his claim. Appellant contends that, in view of its relation to the property and the Carpenters by reason of the purchase, it may at least show that the mortgage sought to be foreclosed was paid either in whole or in part. Upon the other hand, respondent's counsel vigorously contend that inasmuch as appellant has conceded that it purchased the premises in question "subject" to the mortgage, it cannot interpose the defense of payment or want of consideration or any other defense through which it assails the validity of the mortgage.

A number of cases are cited which counsel asserts support their contention. We have carefully examined all the cases cited by them and others in which the question now under consideration is discussed, and, while some of the cases cited seem to sustain the broad claim that one who purchased land "subject" to an existing mortgage or incumbrance cannot attack the validity thereof, yet the great weight of authority does not sustain the claim as broadly as it is made. In our opinion the correct doctrine is stated by the author of Jones on Mortgages (6th Ed.) section 744, in the following words:

"The purchaser is not allowed to defend against the mortgage he has assumed to pay on the ground that it was made without consideration or that the consideration has failed and therefore is not valid against his grantor, for the latter having appropriated a portion of the purchase price of the land to the payment of a sum of money to a third person, and made it a charge upon the land, it does not matter whether there was any legal obligation upon him to pay it or whether it was at the time of the sale a lien upon the land; his grantee, having undertaken to pay it, is precluded from assailing its validity. The same rule applies to one who has purchased subject to a mortgage, the amount of which is deducted from the consideration paid. But it seems that the grantor may confer upon the purchaser the right to question the validity of the mortgage."

Further on in the same section the author says:

"Even one who has bought subject to a mortgage, without assuming the payment of it so as to make himself personally liable, cannot contest the validity of the mortgage lien, *for, when the amount of the mortgage has been deducted from the amount of the consideration of the purchase, it is in effect an agreement that so much of the purchase money shall be paid to the person holding the mortgage.*" (Italics ours.)

In most of the cases cited by counsel the decisions are expressly based upon the fact that the purchasers had either deducted the amount of the mortgage from the purchase price or had expressly assumed or agreed to pay the amount remaining unpaid on the mortgage. While it is true that some of the cases seem to go farther than this, yet it is not clear that they do so, since it is not clearly made to appear whether the amount of the lien was actually deducted from the purchase price or not. In the case at bar it was neither pleaded nor proved that any amount was deducted from the purchase price. The only evidence in the record on that point is found in Mr. Carpenter's testimony. When asked whether the amount of the mortgage was deducted from the purchase price for which he sold the premises to the Stewarts and Mrs. Taylor, he said that the matter was not considered at all. All we have, therefore, is the statement in one deed that it was given "subject" to certain mortgages and an admission to the same effect at the trial. That to purchase lands "subject" to a mortgage does not necessarily bind the purchaser to what may be claimed to be due thereon is clearly stated by the Supreme Court of Illinois in *Crawford v. Nimmons,* 180 Ill. 143, 54 N. E. 209. It is there held that under recording acts where the mortgage is recorded the purchaser takes subject to the mortgage whether it is so stated in the deed or not, and that merely to insert in a deed that it is subject to a mortgage legally amounts to no more. It is accordingly held in that case, and in our judgment the decision is supported by the great weight of authority, that unless the grantee in the deed assumed or agreed to pay the mortgage, or unless the amount of the mortgage was deducted from the purchase price, a purchaser who takes subject to the mortgage merely

is not estopped from assailing the validity of the mortgage or from showing that it has been paid, or that the amount claimed is not legally owing upon it. Where the purchaser merely purchases subject to an existing mortgage without either assuming to pay it or without deducting the amount claimed due thereon from the purchase price the reason for the rule which estops him from assailing the mortgage fails, and the reason failing the rule itself must fail. To hold that under such circumstances the purchaser is not estopped is also in consonance with the holding of this court that a subsequent purchaser or mortgagee may protect his interest in the premises in question by invoking the statute of limitations. (*Graves v. Seifried,* 31 Utah, 203, 87 Pac. 674; *Boucofski v. Jacobsen,* 36 Utah, 165, 104 Pac. 117, 26 L. R. A. (N. S.) 898.) In the following cases, *Freeman v. Auld,* 44 N. Y. 50, *Smith v. McMillan,* 46 W. Va. 577, 33 S. E. 283, *Hartley v. Tatham,* 24 How. Prac. (N. Y.) 511, *Moulton v. Haskell,* 50 Minn. 367, 52 N. W. 960, *Crawford v. Edwards,* 33 Mich. 354, *Parkinson v. Sherman,* 74 N. Y. 88, 30 Am. Rep. 268, and *Essley v. Sloan,* 116 Ill. 391, 6 N. E. 449, the doctrine now under consideration is discussed and applied.

It will be found that the decisions in the foregoing cases are all based upon the fact that the grantee either assumed or agreed to pay the mortgage or had deducted the amount thereof from the purchase price of the mortgaged premises. It was under such circumstances that it was held that the purchaser was estopped from assailing the validity of the amount due upon the debt secured by the mortgage. It will also be observed that in all of the foregoing cases the facts which estopped the grantee were in most instances pleaded, and in all proved as other facts in the case. As we have seen, there is neither allegation nor proof in this case, although the questions are argued in this court. It follows, therefore, that, unless a purchaser for some legal or equitable reason has estopped himself from protecting the interest he has acquired in incumbered premises, we can see no good reason why he should not be permitted to protect his inter-

est by contesting any illegal claim that may be sought to be enforced against it. In the absence of proof, therefore, that the appellant had deducted the amount claimed unpaid upon the mortgage in question from the purchase price, the finding of the court that it was liable for the full amount found due upon the mortgage, including the $4400, cannot be maintained.

We think that at least the item of $4400 and one for $32.96, which was claimed as interest and charged against Carpenter and added to the amount claimed to be due upon the mortgage, should be deducted from the amount as of the dates when the charges were made, and hence the interest on those items would also have to be deducted from the amount now claimed to be due. The interest charge of $32.96 is clearly without right and in a court of equity cannot be allowed. The charge is claimed to have arisen upon the alleged overdrafts made by Carpenter which continued from April to July 1907. But, as we have seen, during all of that time the trust company had on deposit thousands of dollars which was credited to the building fund and upon all of which Carpenter was paying interest to said company. The whole matter thus came about through a mere fiction of bookkeeping, which, in a court of equity, cannot be permitted. This is a clear case of a double charge of interest which he at least who comes into a court of equity claiming equity cannot in good conscience enforce.

But, as we have pointed out, the appellant interposed a plea of tender which it proved and relied on at the trial. This tender was made under our statute, and, in case the bonus of $4400 and the unauthorized interest is deducted from the amount claimed to be owing on the mortgage in question, the tender would have the effect of at least preventing the respondent from recovering the attorney's fee of $750 which was allowed by the court and the costs of the action. If appellant, therefore, seeks to benefit because of the tender, it must likewise submit to any consequences that the law may impose upon him who

seeks such benefit. Respondent's counsel, however, insist
that in making the tender appellant admitted that there
was due and owing upon the mortgage in question at least
the amount of the tender, namely, $4500, and that respond-
ent is entitled to judgment for that amount as against ap-
pellant at all events. A number of cases are cited in sup-
port of this contention. We think the true rule is stated
by the author of Hunt on Tender, section 401, in the fol-
lowing words:

"It is frequently settled in general terms, perhaps oftener than
otherwise, that a tender is a conclusive admission that the amount
tendered is due, and that the party in whose favor the tender is
made is entitled to that amount. While the tender is the admis-
sion, the foundation upon which the rule rests, yet the statement
is inaccurate. It does not in fact become conclusive until the
tenderer makes it a matter of record. The rule has been compre-
hensively stated thus: 'A plea of tender is an unequivocal admis-
sion of the justice of the plaintiff's claim to the extent of the sum
tendered. So conclusive is the admission that if the tender is re-
fused, and the party proceeds to trial, and it shall turn out that
the plaintiff was not legally entitled to anything, the plaintiff shall
have a verdict for the sum tendered.' A verdict should not be
against the admission, and a judgment entered on a verdict to the
effect that the plaintiff had no cause of action, or if for a less sum
than that admitted to be due by the plea will be reversed; but
the judgment may be for more."

Where a tender has been made, therefore, the party in-
voking it must be bound thereby unless he pleads and proves
that he was misled or deceived in making it. Upon such
proof, if pleaded, he may be relieved from the consequences
of the tender; but, when there is no such claim and he pleads
and relies upon the tender, he must assume the consequences
of the admission implied thereby. As the evidence now
stands, therefore, even through appellant has not deducted
the amount claimed to be due upon the mortgage from the
purchase price, and although it be permitted to defend
against the bonus of $4400 and the item of $32.96, for the
reasons stated, yet it having tendered the sum of $4500,
judgment for that sum should nevertheless be entered
against it. In such event no attorney's fee nor costs, how-

ever, can be taxed against it. Counsel for appellant, however, contend in this court that in view that it had tendered as much as or more than was legally due on the mortgage, which tender was refused, therefore the premises in question were discharged or released from the lien of the mortgage.

It is further contended that, in view that no personal judgment can in any event be rendered against appellant for the amount claimed to be due on the mortgage, therefore the respondent is precluded from recovering any judgment in this case. We need not determine in this case, however, under what circumstances a tender 7 discharges the lien of a mortgage for the reason that in no event can the appellant insist that, as the purchaser of the equity of redemption, without assuming payment of the debt, it could by its tender discharge the premises from the mortgage lien. The appellant was a stranger to the contract between the trust company and the Carpenters, its grantor, and hence the only effect the tender would have would be to stop interest on the debt and to prevent the recovery of costs and attorney's fee. The rule is clearly stated in Hunt on Tender, section 373, in the following words:

"A tender by a mere stranger will not discharge the lien of a mortgage. Where mortgaged premises are conveyed to a purchaser subject to a mortgage, but without any assumption of the debt by him, a tender by such owner of the equity of redemption will not discharge the lien. As between the mortgagor and the purchaser of the legal estate, the mortgage debt is part of the consideration, and the land is the primary fund for the payment of the mortgage debt. Hence a purchaser cannot be permitted to discharge the lien of the mortgage by a mere tender without payment. If he desires to pay the mortgage debt so as to free his land, and the mortgagee refuses the money, he has his remedy in equity to compel a discharge of the mortgage, and by keeping the tender good, and bringing the money into court for the purpose of the payment, he stops the running of interest, and subjects the mortgagee to the costs of the suit. Or in a suit to foreclose he may plead the tender as a defense and bring the money into court with like effect."

In the following cases the legal effect of a tender is considered and applied. While in some of them the courts may seem to go beyond the text above quoted, yet all clearly sustain the principle we seek to invoke here. (*Denver S. P. & P. R. Co. v. Harp,* 6 Colo. 424; *Cobbey v. Knapp,* 23 Neb. 591, 37 N. W. 485; *Dussoulas v. Thomas,* 6 Pennewill [Del.] 1, 65 Atl. 590; *Ahrens v. Fenton,* 138 Iowa, 559, 115 N. W. 233.)

Under the present state of the pleadings and evidence, therefore, the judgment in favor of the respondent cannot be sustained, nor is the appellant entitled to a judgment in its favor, as contended for by it. In view that the questions we have discussed were not tried out **8** in the court below and no findings were made upon them, we shall not finally dispose of the case at this time but shall remand it to the trial court so that all the questions involved in the case may be threshed out in that court where the pleadings may be amended if either party so desires.

We desire to add that we do not wish to be understood as holding that there may not be other items than the $4400 and $32.96 which are claimed against the Carpenters and which are added to the amount due on the mortgages that should not be allowed. We have simply mentioned those two items because they are clearly such as in no event should be allowed in a court of equity as against **9** one who may legally defend against them. Nor do we wish to be understood as holding that, in case it be found that appellant deducted the amount claimed to be due on the mortgage from the purchase price, for that reason alone it is conclusively estopped from assailing the validity of the mortgage so far at least as the two items of $4400 and $32.96 are concerned. If the appellant can prove by competent evidence that in making the defense it does so with the consent of the Carpenters, or as their assignee or trustee, it may defend as against all items which the Carpenters could defend against.

The claim of usury cannot be made available in this case for the reason that the contract in question was entered into before the usury law of this state became effective.

The judgment is reversed, and the cause is remanded to the district court, with directions to grant a new trial, to permit the parties or either of them to amend the pleadings if so advised, and to proceed and determine the case in accordance with this opinion.   Costs to appellant.

McCARTY, C. J., and STRAUP, J., concur.