### GRAHAM v. OAKES et al.
### No. 945.

Court of Civil Appeals of Texas. Waco.
Nov. 13, 1930.

Rehearing Denied Dec. 4, 1930.

Albert Boggess and Trippet, Richey & Sheehy, all of Waco, for appellant.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, La., and Taylor, Atkinson & Farmer and James P. Alexander, all of Waco, for appellees.

GALLAGHER, C. J.

This suit was instituted by appellees Guy F. Oakes, John B. Atkinson, and the Price-Booker Company, a corporation, against appellant, M. K. Graham, Albert Boggess, and W. H. McCullough, Jr., to cancel a deed of trust executed by W. H. McCullough, Jr., to Albert Boggess, trustee, on a certain tract of land situated in McLennan county, Tex., to secure the payment of two notes executed by said McCullough to appellant for the sum of $10,233 and $2,500, respectively. The sufficiency of the pleadings to raise the issues determined in this cause is not assailed. The principal errors assigned by appellant involve the legal effect of the evidence considered as a whole. The facts in evidence will therefore be recited in connection with the discussion of such assignments.

The case was submitted to a jury on special issues, which; with the answers of the jury thereto, are as follows:

"Special Issue No. 1: Did W. H. McCullough, Jr., acquire the title to the property in question under the agreement with Guy Oakes that if the said Oakes would furnish $12,500.00 with which to purchase the property, that McCullough would return one-half thereof within ten days or two weeks and that they would incorporate the business upon a fifty-fifty basis and convey said property to said corporation? Answer: Yes."

"Special Issue No. 2: Did M. K. Graham or his attorney, Albert Boggess, at the time of loaning the money in question to W. H. McCullough, Jr., have knowledge of such facts as would have put a reasonably prudent person upon inquiry as to the true conditions under which W. H. McCullough, Jr., was acquiring title to said property? Answer: Yes."

"Special Issue No. 3: Would a reasonable inquiry by the defendant Graham or his attorney, at the time of loaning the money in question, have disclosed the conditions of the agreement set out in special issue No. 1, under which W. H. McCullough, Jr., was purchasing said property? Answer: Yes."

"Special Issue No. 4: Did W. H. McCullough, Jr., authorize Albert Boggess to strike out the clause in question in the Graham deed of trust? Answer: Yes."

Appellant's requested issue No. 2: "Did the said McCullough and Oakes, after the acquisition of said property, abandon said original agreement? Answer: No."

Appellant's requested issue No. 3: "Did Guy Oakes advance the $12,500.00 to said McCullough, Jr., as a loan? Answer: No."

Appellant's requested issue No. 6: "Did Price Booker Company ratify the deed of trust from McCullough, Jr., to Graham after discovering that same had been given? Answer: No."

The court rendered judgment on said verdict, canceling said deed of trust in so far as the same purported to constitute a lien on the property involved herein. Hence this appeal.

### Opinion.

Appellant assigns as error the action of the court in refusing, at his request, to charge the jury peremptorily to return a verdict in his favor. The consideration of this assignment requires a review of the entire testimony, of which only a brief summary can be here given. The Price-Booker Manufacturing Company, a corporation engaged in the manufacture of pickles and condiments, owned a factory site located at Waco, Tex., and in connection therewith a large stock of manufactured products and other personal property. It also had an established business of considerable volume. W. H. McCullough, Jr., was a stockholder in such corporation. He was indebted to Oakes in the sum of approximately $16,000, which debt was secured by his stock in said corporation as collateral. Said corporation was adjudged bankrupt and Oakes' security for his debt thereby rendered worthless. The bankruptcy court ordered the assets of said corporation, real and personal, sold by the trustee. McCullough concluded that such assets could be purchased at a bargain. He entered into negotiations with Oakes to furnish the necessary funds to make such purchase. He believed that $12,500 would be sufficient. Oakes agreed to furnish and did furnish that amount in cash, with the understanding that same should be used in purchasing said properties, and that thereafter McCullough should repay to him one-half of such amount and they would then join in organizing a new corporation to take over the properties and continue the business.. They were to be equally interested in such new corporation. The trustee took separate bids on the real and personal property.[*] The personal property was awarded to McCullough upon his bid of $10,075. The trustee, however, instead of selling the real estate subject to incumbrances thereon, as McCullough had expected him to do, offered the same for sale free of incumbrance. McCullough's bid of $20,000 therefor was accepted by the trustee. To enable him to purchase the same, the holders of the incumbrances on said real property became the nominal purchasers thereof and credited the purchase price on their secured claims. The trustee then at their request conveyed said property to W. L. Sleeper, who in turn conveyed the same to McCullough in consideration of $3,500 in cash and vendor's lien notes for $16,500. It seems the parties interested would not accept a smaller cash payment.

The money furnished for such purchase by Oakes therefore lacked $1,075 of being sufficient to pay the purchase price for the entire properties. McCullough applied to Oakes for the additional sum needed, but Oakes declined to advance the same, and McCullough agreed to furnish such sum himself. McCullough was at the time also indebted to appellant, M. K. Graham, in the sum of approximately $10,000. He requested Graham to loan him $2,500 to aid him in purchasing said property. McCullough, in the negotiations with Graham, treated the property as his own, but there is evidence tending to show notice to Graham of such facts as to put him on inquiry as to the rights of Oakes in the premises. Graham finally agreed to loan McCullough $2,500 if he would secure the repayment of the same and also his old debt. McCullough thereupon executed his note to Graham for $2,500 and secured the same by chattel mortgage on or pledge of all or a large part of the personal property purchased by him from the trustee in bankruptcy. He also executed and delivered a deed of trust on the real estate so purchased to secure both the $2,500 note and the old debt. This agreement was reached

and the liens executed by McCullough at or about the time his respective bids were accepted, but there was some delay in the proceedings in the bankrupt court, and the property was not turned over to McCullough until about two weeks later. At that time the new note, chattel mortgage, and deed of trust were delivered to Graham or his representative, and the $2,500 furnished by him delivered to McCullough. The $3,500 cash payment on the real estate was paid by McCullough out of the money furnished by Oakes, and the remainder thereof, $9,000, applied to the purchase of the personal property. The remaining $1,075 of the purchase price of the personal property was paid out of the money borrowed by McCullough from Graham. McCullough immediately began the operation of said plant and the same has been operated continuously since that time. The remainder of the money borrowed from Graham was used in such operation. McCullough was unable to raise the necessary money to repay Oakes one-half the sum advanced, as he had promised to do, and in August, 1928, about four months after the original purchase of the property by McCullough, he abandoned any attempt to do so. About that time Oakes discovered that McCullough had given to Graham said deed of trust. Efforts to adjust the respective rights of Oakes and Graham failed. About a month later McCullough gave a deed of trust on the real estate to secure Oakes in the repayment of the $12,500 advanced by him for the purchase of said properties. This deed of trust was given because McCullough was unable to reimburse Oakes for one-half of the moneys advanced by him, as aforesaid, and to render incorporation on an equal basis as nearly equitable as possible. McCullough and Oakes, joined by Mr. Atkinson, Oakes' attorney, then incorporated the business as the Price-Booker Company. One-half the capital stock of the new corporation was issued to Oakes, one share to his said attorney, and the remainder to McCullough. McCullough's stock was immediately pledged to Oakes to secure the original $16,000 debt above referred to. McCullough then conveyed the real estate, which still stood in his name incumbered as aforesaid, to the new corporation for a recited consideration of $1, the assumption of the unpaid purchase money in the sum of $16,500, the assumption of the $12,500 due Oakes and subject to any valid and subsisting lien which Graham might have to secure the indebtedness described in said deed of trust from McCullough to him. The $2,500 note given by McCullough to Graham for the money borrowed at the time of the purchase of said properties has been fully paid.

Appellant presents a group of propositions under said assignment, in which he contends, in substance, that the facts in evidence show as a matter of law that McCullough did not hold the property purchased by him from the trustee in bankruptcy and the secured creditors of the old corporation in trust for either Oakes or the new corporation subsequently formed; that, if he ever held such property in trust, the giving of said deed of trust to Oakes to secure the entire amount advanced by him in the purchase of such property and the acceptance of same by said Oakes constituted an election on his part to treat his advancement as a loan, and constituted an abandonment of any rights under the original agreement, if such agreement should be construed to have vested in McCullough title to said property in trust for the purposes contemplated. The facts above recited show without dispute that Oakes and McCullough joined in a mutual attempt to promote the organization of a new corporation to take over the properties, real and personal, of the old corporation which had just gone into bankruptcy. Oakes advanced what was supposed to be a sufficient sum to purchase the properties. When this amount proved insufficient McCullough agreed with him to furnish the additional sum needed himself. Oakes' money was paid out on the purchase price of the properties and McCullough took title thereto in his own name. He therefore, in holding such property, occupied a fiduciary relation toward Oakes and also toward the proposed new corporation when it should come into existence. 14 C. J. 253, § 285; Id., p. 266, § 306. We cannot say that the facts recited show as a matter of law, that is, with such certainty that reasonable minds cannot differ on the issue, that the execution and delivery of the deed of trust to Oakes to secure the repayment of the money originally advanced by him, under such facts, constituted an abandonment of the original purpose to use the property purchased as the nucleus of a new corporation, in which he should have an interest commensurate with such advancement, or a waiver of the beneficial rights vested in him at the original purchase of said property. Since McCullough held the real estate upon which said deed of trust to Graham was given, in a fiduciary capacity, the attempt on his part to incumber the same for his private individual debt to Graham was void as to Oakes and the proposed new corporation if Graham had notice that McCullough was holding said property in such capacity. Mansfield v. Wardlow (Tex. Civ. App.) 91 S. W. 859, 863 (writ refused), and authorities there cited; Scarborough v. Arrant, 25 Tex. 129, 137; Sonnenberg v. Hajek (Tex. Civ. App.) 233 S. W. 563, 564, par. 2. The testimony in this case clearly raised an issue of such notice to Graham at the time he accepted the deed of trust. We are therefore required, in considering the refusal of appellant's requested peremptory charge, to regard Graham as charged with such notice. Said propositions are overruled.

■■ Appellant presents another proposition under said assignment in which he contends, in substance, ·that since McCullough was intrusted by Oakes with the acquisition of the properties, and since it became necessary to enable him to do so to raise at least the sum of $1,075, and since Graham refused to loan McCullough any money unless his old debt, as well as the additional sum advanced, was secured by liens on the properties to be acquired, the corporation, on its organization, having notice of all the facts, could not accept title to such properties free from such liens, but necessarily held title thereto subject and subordinate to such liens. Appellant invokes in support of said proposition the well-known rule that, when a corporation accepts the benefit of a contract made in its behalf by its promoters, it takes the same burdened with the obligations assumed therein. Said rule is not applicable in this case. We quote in this connection from 14 C. J. p. 262, § 293, as follows: "A contract·made by the promoters of a corporation is not binding upon the corporation when formed, on the theory of an implied ratification or adoption by the receipt of the benefits thereof, unless it was made upon the credit of the corporation and with a mutual expectation that the promoters would form the corporation and that the corporation would assume the contract."

■ McCullough did not, in dealing with Graham, purport to be acting for his associate Oakes or the proposed new corporation. He ignored the trust and treated the properties for the purchase of which he had contracted as his own. The money loaned by Graham was loaned upon the personal obligation of McCullough and the security given by him upon the properties purchased, which he treated as his own. As before stated, in passing upon this assignment, we are required to regard Graham as charged with notice that McCullough, if he consummated the purchase of said properties as proposed, would hold title thereto in a fiduciary capacity. Such being the case, he was also charged with notice of the fact that McCullough could not incumber said properties for his individual debt, and that any attempt on his part to do so would be void. Mansfield v. Wardlow, supra; Weatherford, M. W. & N. W. Ry. Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 797, 40 Am. St. Rep. 837, et seq.; Hecla Consolidated Gold Mining Co. v. O'Neill, 65 Hun, 619, 19 N. Y. S. 592; Id., 67 Hun, 652, 22 N. Y. S. 130, affirmed 148 N. Y. 724, 42 N. E. 723; Seacoast R. Co. v. Wood, 65 N. J. Eq. 530, 56 A. 337, 339 et seq. All equitable considerations are removed in this case by reason of the fact that the whole sum of $2,500 advanced by Graham to McCullough at the time of the transaction in question has been fully repaid. Said proposition is also overruled.

■■ Appellant presents another proposition under said assignment in which he contends, in substance, that, since McCullough stipulated in his deed to the corporation that the title thereby conveyed was subject to any valid and subsisting lien held by appellant to secure the indebtedness aforesaid, it was thereby estopped to deny the validity of such lien. The general rule on the issue raised by said proposition is that the acceptance of a deed containing a recital that the premises are incumbered with a certain mortgage, definitely described, will estop the grantee from denying its existence. This rule is based on the theory that the specific recital of the existence of the mortgage by the vendor in his conveyance is an express recognition of its validity, and that the price paid by the vendee has been abated to the extent of such incumbrance. The authorities, however, hold that, though the property is conveyed subject to a specific mortgage, if the amount thereof has not been deducted from the purchase price, the grantee may attack the validity of such incumbrance. Clark v. Scott (Tex. Civ. App.) 212 S. W. 728, 734, par. 12; Brunswick Realty Co. v. University Inv. Co., 43 Utah, 75, 134 P. 608, 611, par. 3; Crawford v. Nimmons, 180 Ill. 143, 54 N. E. 209, 210; 2 Jones on Mortgages (8th Ed.), pp. 280 et seq., § 928, and authorities cited in note 18 thereto; 19 R. C. L., p. 369, § 140 and authorities cited in note 3 thereto; 41 C. J., p. 756, § 829. The rule announced in said authorities is tersely stated in the section of Jones on Mortgages above cited in the following language: "But if the mortgage to which conveyance is made subject is not deducted from the consideration or made a part of it, the recital does not estop the grantee from contesting its validity."

■ McCullough held title to the property in a fiduciary capacity. The consideration for his conveyance thereof to the corporation was the execution of his trust and the vesting of the legal, as well as the equitable title thereto in the corporation. There was no purchase price to be abated. Besides, the deed from McCullough to the corporation cannot, we think, be said to recognize the validity of appellant's lien. On the contrary, the validity of such lien was therein challenged, either expressly or by necessary implication. We think such challenge inured to the benefit of the corporation, and that it is in no way estopped to contest the validity of said lien.

Appellant also assigns as error the action of the court in refusing at his request to charge the jury peremptorily to return a verdict establishing the validity of his lien upon an undivided one-half interest in the real estate involved herein. He contends in propositions submitted thereunder that the effect of the original agreement was the loan by Oakes to McCullough of the sum of $6,250, one-half the total amount advanced by Oakes for the pur-

chase of said properties, and that an undivided one-half interest in said properties immediately on the purchase thereof vested in McCullough, and that his incumbrance thereof for his individual debt was valid. We cannot say that the evidence shows as a matter of law that Oakes intended half the money advanced by him to constitute, at the time of its advancement, a loan to McCullough, nor that he intended that McCullough should have a half interest in the properties purchased until he had actually repaid such sum. The trial court did not therefore err in refusing to instruct the jury peremptorily to return such verdict.

Our holdings on the issues discussed control the disposition of this appeal. The judgment of the trial court is therefore affirmed.