## GRAND COURT OF ORDER OF CALAN-THE OF TEXAS v. EBELING et al.

### No. 8777.

Court of Civil Appeals of Texas. Austin.

May 17, 1939.

Tom M. Pogue and Allan V. McDonnell, both of Waco, for appellant.

J. W. Timmins, of Dallas, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellee Sun Oil Co.

BLAIR, Justice.

Appellant, Grand Court of the Order of Calanthe of Texas, sued the estate and heirs of A. C. H. Ebeling, deceased, for debt, consisting of 35 notes or bonds executed by Ebeling, payable to bearer, each for $1,000, aggregating $35,000; and to foreclose a deed of trust lien on 3,493.80 acres of land in Dimmit County, Texas, securing the debt. After executing the bonds and deed of trust lien and selling them to appellant, Ebeling executed an oil and gas lease on a certain 640-acre tract of the land covered by the lien to Charles A. Henderson, who assigned it to W. K. Hurd, who in turn assigned it to appellee Sun Oil Company. The Oil Company was made a party defendant for the purpose of foreclosing the lien against its leasehold interest. Appellant alleged that Ralph C. Goeth, the trustee named in the deed of trust, which was duly recorded in the deed records of Dimmit County prior to the execution of the oil and gas lease, had, without authority and without the knowledge or consent of appellant, attempted to execute a subordination agreement, subordinating the deed of trust lien to the oil lease.

Appellee Oil Company specially plead its chain of title to the oil and gas lease through Henderson and Hurd; and asserted that it purchased the oil and gas lease in good faith on August 15, 1936, for $800, without any actual or constructive notice that appellant owned the notes or bonds and lien; that appellant failed to file any evidence of record of ownership of the notes or bonds and lien; and having failed to exercise any reasonable diligence in giving notice of its claim of ownership of the notes or bonds and lien, the lessees, Hurd and Sun Oil Company, were misled and purchased the lease on the representations of Ebeling that Goeth owned the notes, and in reliance upon the subordination agreement signed by Goeth, which recited that he was the owner of the notes; and that appellant was therefore estopped to assert that its interest under the deed of trust is superior to the oil and gas lease; and appellee Oil Company further asserted that it had a right to a marshalling of assets, if appellant's lien were held to be superior to the lease.

A trial to the court without a jury resulted in judgment for appellant against all other defendants for its debt and for foreclosure of the deed of trust lien; but as to appellee Sun Oil Company, it was decreed that appellant take nothing by its suit.

The deed of trust was dated October 31, 1933, filed for record April 18, 1934, and is copied in full in the statement of facts. We will not copy the instrument here, but will state its material provisions. It recited that Ebeling "has executed unto bearer 35 certain mortgage bonds;" but it does not recite that any of said bonds had been issued or delivered. In the face of the deed of trust there is set out a sample of the bond, which provides: "This bond shall not be valid and obligatory unless and until authenticated as one of said series of bonds by a certificate indorsed hereon, signed by the said Ralph C. Goeth, trustee." It further provides, that "this bond may be registered in the owner's name on the registration book kept by the office of said A. C. H. Ebeling; said registry shall be noted on the bond, after which no transfer hereof shall be valid unless made on said books by the registered owner and similarly noted on the bond." The sample bond in the deed of trust showed on its face that it had not been so authenticated nor registered. The deed of

trust expressly provided that the notes or bonds were to be issued to bearer; and also expressly authorized the trustee to pay the taxes and insurance, and to add such sums to the said indebtedness, bearing interest at 10% and secured by the lien on the land. The deed of trust further provided that "any part of the property herein conveyed may be released from the lien of this instrument, but without in any manner altering or diminishing the effect of this lien in favor of any claim whatsoever in or attached to said property not so released, arising after this date by purchase or otherwise." The deed of trust further provided that "any recitals in the deed or deeds made by the trustee or his successor under the power herein given shall be conclusive evidence of the facts they recited in any court of justice." The deed of trust contained the usual power of sale after notice by the trustee, if default were made in the payment of any bearer note or bond, or interest due thereon, or for breach of any other term of the deed of trust, at the option of the holder of any note or bond.

The 35 notes or bonds, one of which has been copied in the statement of facts, were introduced in evidence, and the evidence showed them all to be similar, except for dates. They are payable to bearer. In 1933, appellant purchased $10,000 worth of the bonds, which were transferred to it without written assignment but by delivery of the bonds. In the same manner, in 1935, appellant purchased the remaining $25,000 of bonds, at which time it did not receive any assignment, but the bonds and coupons attached thereto were delivered to appellant. Appellant did not file anything in the Dimmit County Records to evidence its ownership of the bearer bonds, other than the deed of trust.

At the time appellee Oil Company purchased the oil and gas lease, no instrument was filed in the records of Dimmit County in reference to the ownership or holder of the bearer bonds, or in reference to the deed of trust lien, other than as recited in the deed of trust itself. The oil and gas lease from Ebeling to Henderson was dated August 3, 1936, and contained a general warranty of title. The lease does not mention the deed of trust lien or the notes or bonds. The assignment of the lease from Henderson to Hurd, dated August 4, 1936, and the assignment of the lease from Hurd to appellee, dated August 15, 1936, are in regular form, but contain no reference to the deed of trust or bonds. The subordination agreement was executed and acknowledged by Ralph C. Goeth, on August 18, 1936. He recited in the subordination agreement that, "I, Ralph C. Goeth, trustee, being the owner of said notes," and signed and acknowledged same as trustee. Appellee Oil Company's witness, Whittenburg, testified that he was employed by the Sun Oil Company in its title department, and that he examined and knew of the transactions under which the Sun Oil Company purchased the lease in question. He testified that he had information concerning the recorded deed of trust; but that he did not know or have any notice as to who were the owners and holders of the bearer bonds and deed of trust lien; that Hurd from whom the Company purchased the lease obtained the subordination agreement which recited that Ralph C. Goeth, the trustee, was the owner of the notes or bond; that he had information that the $35,000 indebtedness was in good standing, with all installments of interest paid, amounting to $1,050, with the next installment due October 1, 1936, which information he obtained from a questionnaire, dated August 3, 1936, and signed and sworn to by A. C. H. Ebeling; and that he requested Hurd to obtain the subordination agreement, which he did, and it was received by the Company before it paid Hurd for the oil and gas lease.

The Sun Oil Company had paid rentals on the lease, depositing $320 as a credit to Ebeling at the Austin National Bank in July, 1937. Hurd had no connection with the Sun Oil Company, but had in mind when he purchased the lease from Henderson for $650 that he would submit it to the Sun Oil Company for purchase, and knew that he must secure the subordination agreement; and that he would not have purchased the lease unless the subordination agreement had been executed; that he did not know in fact that any bonds were in existence, but knew of the deed of trust; and that he was informed by Ebeling that Ralph C. Goeth owned the notes. He did not request that Goeth produce the notes.

The subordination agreement was prepared under the direction of Ebeling and was executed by Goeth, reciting that, "I, Ralph C. Goeth, trustee, being the owner of said notes;" and Goeth signed and acknowledged the instrument as trustee; and further reciting that it was for the best interest of the holders of the notes that the deed of trust lien be subordinated to the oil lease.

Appellant contends that since the deed of trust did not expressly authorize the trustee to execute the subordination agreement, or to subordinate the lien or security given to secure the notes or bonds payable to bearer, he was without authority to do so as a matter of law. In this connection, appellant contends that since the deed of trust was duly recorded, all persons dealing with properties covered by said deed of trust were charged with notice of the fact that the holder or holders of such bearer notes or bonds were the mortgagees; and in dealing with said properties or land are estopped to rely upon any unauthorized act or representations of the trustee of such deed of trust; and that appellee Oil Company in the instant case, having made no effort to see the notes or bonds, or to require the presentation of them, was and is estopped to rely upon the purported subordination of the lien made by the trustee wholly without any authority under the trust instrument, and without the knowledge or consent of the holders of said notes or bonds and lien.

Appellee Oil Company contends that the deed of trust failing to show that a debt existed and that a lien was therefore in effect, and there being no other instrument filed of record showing that the bearer notes or bonds had been issued and that a lien was thus in existence, or showing the ownership of the notes or bonds, if issued, appellee was not charged with constructive notice that appellant had an interest in the lands, or of any lack of authority of Goeth to execute the subordination agreement; and that since appellee bought the oil and gas lease in good faith for a valuable consideration, the lease containing a general warranty by Ebeling of his title, and after having been furnished a sworn statement by Ebeling that Goeth owned the notes, and after having been furnished a written and acknowledged subordination agreement, signed by Goeth, reciting that Goeth owned the notes, Ebeling and Goeth being the only persons indicated by the record or by the circumstances who were in a position to know whether the notes had been issued and to hold them if issued; and there being nothing in the circumstances to excite suspicion that the representations of Ebeling and Goeth were untrue and requiring further inquiry; it being undisputed that appellee had no actual notice that appellant had the notes and claimed an interest in the land, the appellee Sun Oil Company was an innocent purchaser for value without notice as a matter of law, and its lease is superior to the lien asserted by appellant. Appellee further contends that if the evidence were not sufficient as a matter of law to show that the Sun Oil Company had made such inquiry as a reasonably prudent person would have made under the same or similar circumstances in seeking to discover the ownership of the notes or bonds, then the issue was one of fact and was determined by the trial judge in favor of appellee; and that the evidence fully supports the trial court's judgment thereon.

█ The contentions of appellant must be sustained. Appellee Sun Oil Company was fully informed at the time it purchased the oil lease in August, 1936, that the bearer notes secured by the recorded deed of trust lien had been issued and delivered. The sworn answers of Ebeling to the questionnaire sent to him by appellee informed it that the notes were in good standing, with interest paid thereon to October 1, 1936. With this knowledge of the status of the bearer notes and with actual and constructive notice of the recorded deed of trust lien securing them, appellee requested that said lien be subordinated to the oil lease interest. This was attempted to be done by the trustee named in the deed of trust, who recited in the subordination agreement that, "I, Ralph C. Goeth, trustee, being the owner of said notes," agree that the deed of trust lien be subordinated to the oil lease interest; and further recited and showed that he signed and acknowledged the instrument as trustee. The deed of trust did not authorize the trustee to execute the subordination agreement without the knowledge or consent of the owner or holder of the bearer notes secured by the recorded deed of trust lien. If Goeth owned the notes as trustee, as recited in the subordination agreement, then the deed of trust did not authorize him to execute the subordination agreement under the settled rule that a trustee in a deed of trust or trust instrument may exercise only such power in dealing with the trust property or estate as is expressly granted in the trust instrument. Brown v. Harris, 7 Tex.Civ.App. 664, 27 S.W. 45; Mansfield v. Wardlow, Tex.Civ.App., 91 S.W. 859; 65 Corpus Juris Trusts, p. 730; Haldeman v. Openheimer, 103 Tex. 275, 126 S.W. 566; Jackson v. Templin, Tex.Com.App., 66 S.W.2d 666, 92 A.L.R. 873; Graham v. Oakes, Tex. Civ.App., 32 S.W.2d 916, 917; Murphy-

Bolanz Land & Loan Co. v. McKibben, Tex.Com.App., 236 S.W. 78; Dial v. Martin, Tex.Civ.App., 37 S.W.2d 166.

█ Nor was appellee Sun Oil Company an innocent purchaser of the oil leasehold interest without notice that appellant was the owner of the bearer notes. The notes were payable to bearer, and were therefore transferable by delivery. The deed of trust did not authorize the trustee to execute the subordination agreement. Appellee Oil Company did not exercise any degree of care to ascertain the nature of the trustee's claim of ownership of the notes. It was extremely careless in not requiring the trustee to produce the bearer notes which he claimed to own; or at least to require some evidence that he owned or held the notes in such capacity as would authorize him to subordinate the recorded deed of trust lien securing them to the oil leasehold interest of appellee. The deed of trust was recorded, and appellee had actual notice that the bearer notes had been issued and delivered; that they did not mature for a long period of years; and that same were in good standing with all interest paid thereon to October 1, 1936. Having made no inquiry of either Ebeling or Goeth, the trustee, as to the ownership of the negotiable bearer notes, which were described and secured by the recorded deed of trust lien, we hold that appellee did not show itself to be an innocent purchaser of the oil leasehold interest in the land either as a matter of law or factually. No case on all fours is presented by either party; but by analogy the case of Windle v. Bonebrake, C.C., 23 F. 165, sustains our holding on this particular point. See, also, Montgomery v. Noyes, 73 Tex. 203, 11 S. W. 138; Weldon v. Tollman, 8 Cir., 67 F. 986.

We do not understand that appellee Oil Company relied upon any information obtained by Hurd, its immediate predecessor in title, to sustain its plea of innocent purchaser. If it did, then it is in no better position, because both appellee and Hurd knew that the notes had been issued and delivered. Ebeling told Hurd that Goeth owned them. Goeth recited in his subordination agreement that he owned them as trustee, and executed and acknowledged the instrument as such trustee. Neither appellee nor Hurd inquired of Goeth as to his ownership of the notes as trustee or individually; and, of course, neither of them requested him to produce the notes for in-

spection. Thus it was shown that Hurd was informed by the maker of the notes that Goeth owned them; but by his subordination agreement, executed at the request of both appellee and Hurd, Goeth only claimed to own them as trustee named in the recorded deed of trust; and he executed and acknowledged the subordination agreement as such trustee only. Under such facts and circumstances, the ordinarily prudent person would have inquired of Goeth whether he owned the notes as trustee, as claimed in the subordination agreement, or individually; and would have required that he produce the negotiable bearer notes for inspection. If Goeth owned the notes as trustee, the deed of trust did not authorize him to subordinate the recorded lien securing them to the oil leasehold interest. Manifestly, appellee can not base its claim of innocent purchaser upon the unauthorized subordination agreement executed by the trustee. And under our above conclusion we regard the only question presented as being whether appellee Oil Company made such inquiry as to the ownership of the bearer notes as an ordinarily prudent person would have made under the same or similar facts and circumstances; and we conclude that it did not do so either as a matter of law or factually.

█ However, appellee Sun Oil Company contends that appellant, the owner and holder of the bearer notes, failed to file some sort of instrument of record showing its ownership of the notes; and that appellee was not charged with constructive notice that appellant owned the notes, if issued. As shown above, both appellee and Hurd knew that the notes had been issued and delivered, and were in good standing with all interest paid thereon to October 1, 1936, at the time appellee purchased the oil leasehold interest. Nor do the registration statutes require that the owner of the negotiable bearer notes show of record such ownership. The recorded deed of trust showed that it was given to secure certain negotiable notes payable to "bearer," which were therefore transferable by delivery,—no written assignment or transfer being necessary. Appellee therefore knew that the owner of such bearer notes was the beneficiary or mortgagee described in the trust instrument. Therefore, it could not be misled as to who was the owner of such negotiable bearer notes by any act done by the then and present owner; and as above held the only ques-

tion involved was whether appellee made such inquiry as an ordinarily prudent person would have made as to the ownership of the negotiable bearer notes.

 Nor do we regard the provisions of Art. 7425a, Vernon's Ann.Civ.St., as having any application to the instant case. Such statute relates to and defines the power of a trustee to convey, mortgage, etc., property where a trust has been created for the benefit of an undisclosed beneficiary. The recorded deed of trust in the instant case discloses the beneficiary or mortgagee to be the owner or holder of the negotiable bearer notes secured by the deed of trust lien. The deed of trust disclosed the fact that the trustee had only limited power to sell the property in payment of the indebtness secured, or other breach of the trust lien, and he could exercise only such power as was expressly granted therein. This question is foreclosed by the case of Woodall v. Adams, Tex.Civ.App., 7 S.W.2d 922, 925, wherein the court construed the language and history of the statute, and held as follows: "Considering the language used in the construction of the act, it could hardly be thought that the Legislature in passing the act intended it as a protection to one who might accept a conveyance from one whom he knows holds the legal title thereto as trustee for another without the joinder of the cestui que trust."

In accordance with our above conclusions, the judgment of the trial court denying appellant a foreclosure of its deed of trust lien as against the oil leasehold interest of appellee Sun Oil Company is reversed and judgment is here rendered foreclosing such lien.

Appellee asserts that if appellant's deed of trust lien is held to be superior to its oil leasehold interest, then it is entitled to a marshalling of assets, because it did not assume the indebtedness secured by the deed of trust or the lien. Appellant has filed no reply to this contention. In the case of Reed v. Tom, Tex.Civ.App., 2 S.W.2d 909, it is held that appellee as the holder of the subsequent oil leasehold interest would not be entitled to have the other property subject to the mortgage sold first; but in the more recent case of Continental Oil Co. v. Graham, Tex.Civ. App., 8 S.W.2d 719, it is held that the holder of the subsequent oil leasehold who did not assume the mortgage debt was entitled to have the remainder of the property subject to the mortgage sold first, where he has shown that hardship or difficulties would result from not selling the remaining or surface rights retained by the mortgagor first. Since appellant has not contested this contention, and since a sale of the oil leasehold interest would necessarily cause complications of title, we direct the application of this doctrine, and that the property not covered by the oil lease be sold first.

The judgment of the trial court is reversed and judgment is here rendered for appellant in accordance with this opinion.

Reversed and rendered.