S. G. STOCKTON, Appellant,

v.

LAKE TANGLEWOOD & SKYBOLT, INC.,
Appellees.

No. 7904.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 24, 1969.

Rehearing Denied April 7, 1969.

Clayton & Clayton, Amarillo, for appellant; Cleo G. Clayton, Jr., Amarillo, of counsel.

Culton, Morgan, Britain & White, Amarillo, for appellees; Neal R. Allen, Amarillo, of counsel.

JOY, Justice.

This is a trespass to try title suit including an action to recover monies allegedly collected and retained contrary to the terms of a sales contract. Trial was had before the court absent a jury and from judgment for plaintiffs, Lake Tanglewood and Skybolt, Inc., defendant, S. G. Stockton, has perfected this appeal.

In 1959 Stockton, individually, secured from John Curry and Hugh Curry a 99-year lease of 1400 acres of land with provision for annual rental payments and the right of assignment of the lease under certain conditions. In 1960 Stockton assigned the 99-year lease to Lake Stockton, Inc., a corporation of which he was president, a director and stockholder. The 1400-acre tract was developed as a lake resort with a dam constructed to impound water and lots platted and sold to sublessees as provided in the original lease agreement. Stockton and Stockton Construction Co., a corporation owned by Stockton, did most of the lake construction work as well as building roads, streets and other improvements. Stockton and Stockton Construction Co. apparently were paid for all of this work by Lake Stockton, Inc.

In 1965 Lake Stockton, Inc. was heavily in debt, and there remained only two shareholders, S. G. (Roy) Stockton and Robert Hortenstine, president and vice president respectively of the corporation. In December 1965 a contract of sale was entered into between Lake Stockton, Inc. and Ray L. Autrey whereby all assets of Lake Stockton, Inc. were to be conveyed to Autrey or his nominee. Autrey designated as nominee, Lake Tanglewood, Inc., a new corporation formed by John E. Smith, Hortenstine, et al., and a sale was made of all the stock of Lake Stockton, Inc. rather than the assets, with a letter agreement dated December 30, 1965, executed by John E. Smith and S. G. Stockton setting forth certain properties to be retained by the shareholders of Lake Stockton, Inc. and designated the debts to be paid by the sellers (S. G. Stockton and Robert Hortenstine) and the purchaser.

Two additional letter agreements were executed dated August 24 and 25 of 1966 by S. G. Stockton and Lake Tanglewood, Inc. by its Vice President Robert Hortenstine, designating certain lots to be owned by S. G. Stockton and providing for the payment of dues on the lots owned by Stockton as required by Lake Tanglewood, Inc. along with the extension of a note owed by Lake Tanglewood to Stockton and Hortenstine. Lot 7, Block 15, the lot made the basis of this suit, was not listed in either of the agreements. Upon the trial of this cause Stockton sought to introduce into evidence a sublease contract bearing date of September 3, 1963, executed by S. G. Stockton as President of Lake Stockton, Inc. and attested by P. B. Taylor as secretary of such corporation and bearing corporate acknowledgement dated the 30th of November, 1965, notarized by S. E. Stockton (the son of S. G. Stockton). The instrument reflected a filing in the County Clerk's office of Randall County, Texas, on date of October 23, 1967. The instrument had originally been drawn to convey Lot 3, Block 15, but the lot designation had been stricken and the No. "7" substituted therefor. The instrument showed Lake Stockton, Inc. as lessor and S. G. Stockton as lessee. Neither the books and records of Lake Stockton, Inc. nor Lake Tanglewood, Inc. reflected the transaction, nor was any corporate resolution produced authorizing the execution of the sublease contract. The Stockton corporation had

no resolutions for any of the other some 200 sublease contracts that had been sold and delivered. The trial court excluded from evidence the sublease contract conveying Lot 7, Block 15 to S. G. Stockton.

Stockton had accepted on behalf of Lake Stockton, Inc. a check in the amount of $4,000.00 from Jess Pearce dated 1–21–65 with a notation "Lake Stockton Lot 7, Block 15" inscription thereon. Pearce testified that he had paid that amount for the sublease on Lot 7, but had received no instrument of conveyance. In February 1965 Pearce decided he preferred to have Lot 3, Block 15 and approached Stockton in regard thereto. Stockton agreed to exchange Lot 3 for Lot 7, and directed Pearce to make out a check for $500.00 dated 2–17–65 to Stockton's daughter, Jennifer Sheldan, representing the difference in the value of the two lots. Stockton then altered the September 1963 sublease to himself by striking "3" and writing in "7" in the lot designation and issued a sublease in the name of Lake Stockton, Inc. as lessor to Jess Pearce as lessee on Lot 3, Block 15 dated February 17, 1965 and placed on record as of September 10, 1965.

Stockton also collected certain monies from purchasers of lots from Lake Stockton, Inc. and plaintiff brought as a part of this action suit for accounting contending that the collections made were of monies due and belonging to Lake Tanglewood, Inc. in accordance with its purchase agreement with Stockton and Hortenstine. Stockton claimed to own notes executed by four of the purchasers of lots from Lake Stockton, Inc. and had approached the four individuals in regard to payments of the notes to him individually rather than Lake Stockton, Inc. or Lake Tanglewood, Inc. At least two of the purchasers had executed new notes dated December 30, 1965 payable to "S. G. Stockton" or "Robert Hortenstine and S. G. Stockton". This action upon the part of S. G. Stockton apparently was agreed to by Hortenstine. Further plaintiff, Lake Tanglewood, Inc., claimed Stockton owed certain dues in arrears on lots owned by Stockton in a total amount of $795.00.

The trial court awarded title and possession of Lot 7, Block 15 to plaintiff, Skybolt, Inc., (claimant of title through Lake Tanglewood, Inc.) ordered the conveyance of September 3, 1963 expunged from the record and awarded money judgment to Lake Tanglewood, Inc. in the amount of $7,818.17 on its suit for accounting. In addition judgment was granted for Tanglewood, Inc. against Stockton in the amount of the dues claimed owed in the amount of $795.00.

Appellant Stockton complains of error by the trial court in failing to admit into evidence the conveyance dated in 1963 from Lake Stockton, Inc. to Stockton of Lot 7, Block 15 (originally Lot 3, Block 15), and by further rendering the conveyance of no effect and holding that Lake Tanglewood acquired title by a conveyance dated September 28, 1966 whereby Lake Stockton, Inc. conveyed all of its right, title and interest in the original sublease agreement to Lake Tanglewood, Inc.

■ Appellant having failed to request findings of fact and conclusions of law we are compelled to presume that all disputed fact issues were resolved in favor of appellees herein by the trial court and disregard all evidence in conflict therewith. North East Texas Motor Lines v. Dickson, 148 Tex. 35, 219 S.W.2d 795.

■ It is undisputed that S. G. Stockton altered the conveyance dated September 3, 1963 by changing the lot designation from "3" to "7". Both Stockton and Pearce testified that this was done in order to exchange Lots 3 and 7. However, Pearce had never received a conveyance to Lot 7 from Lake Stockton, Inc. No instruments were exchanged as between Stockton and Pearce. The rule regarding alterations of conveyances, as we understand it, is that a material alteration *after* the execution and delivery of said instrument is of no effect and the instrument

stands as originally drawn. Nabors v. Nabors, 230 S.W. 1109 (El Paso Tex.Civ. App.) error refused. See also 4 Am.Jur. 2d, Alterations of Instruments, Sec. 33, P. 33. There being no evidence in the record that the altered conveyance was ever re-executed or redelivered by Lake Stockton, Inc., we find that the alteration had no effect as to Lot 7, Block 15. The alteration was material in that the instrument purported to convey an entirely different tract of land.

In Texas Auto Co. v. Arbetter, 1 S.W.2d 334 (San Antonio Tex.Civ.App.) error dismissed, at page 337 the Court said:

"It is a wholesome and thoroughly settled rule that a director of a private corporation cannot vote, with propriety, in a matter affecting his private interest, any more than a judge can sit in his own case. He cannot, with propriety, deal in his own behalf in respect of the corporate property, or in respect of any matters involving the exercise of his duties as director. And, when he violates this rule of propriety, and enters into a contract with a corporation, especially a contract of purchase of corporate assets, and his vote as a member of the board is necessary to the passage of the resolution authorizing it, this action of the board is sometimes void, and in all cases voidable, at the instance of the corporation, or of its stockholders, or of its injured creditors. Such contracts, when made with the efficient aid of the contracting directors, are presumptively invalid, and the burden of showing that they are entirely fair is upon those claiming under them; and they will always be subjected by courts of equity to the severest scrutiny, and set aside, unless all appearance of bad faith is removed by evidence. The courts will refuse to set aside such contract when, and only when, it is made to appear that it was openly and fairly made for an adequate consideration, and the corporation was adequately represented by other officers or directors." (Citing numerous cases)

■ In this case the evidence demonstrated that the directors of Lake Stockton, Inc. never passed *any* resolutions in reference to *any* of the conveyances of lots by the corporation, and Stockton, as president, had conveyed numerous lots to other companies and individuals. This Lot 3 (or 7) was the only lot, however, identified in the evidence as having been conveyed by Stockton to himself. The instrument itself reflected as consideration "3,500.00 Dollars, paid and to be paid as follows: exchanged for work at Lake Stockton" * * * When, as herein a president and director of a corporation conveys property of a corporation to himself the courts will examine the transaction very closely and, although the conveyance is not void, but voidable only, the same will be cancelled and held for naught upon a showing of unfairness or lack of consideration and no ratification by the corporation of the acts of the president. Brooks v. Zorn, Tex.Civ. App., 24 S.W.2d 742, error dismissed, Tex. Civ.App., 53 S.W.2d 99, affirmed 83 S.W. 2d 949 (Tex.Com.App., 1935, opinion adopted). See also Tenison v. Patton, 95 Tex. 284, 67 S.W. 92 and Shield v. Shield, 286 S.W.2d 252 (El Paso Tex.Civ.App.) refused n.r.e.

■ We find that the trial court had ample evidence to sustain its action of cancellation and voidance of the conveyance on the ground of unfairness and lack of consideration in view of the testimony of other directors that they had no knowledge of the conveyance, and that Stockton was paid in cash for all of the work performed by Stockton and/or Stockton Construction Co. In view of our holding above, the error, if any, of the trial court in excluding the instrument of conveyance from evidence was harmless.

Counsel for appellant points out that the conveyance from Lake Stockton, Inc. to Lake Tanglewood, Inc. was a quit claim

rather than a deed, therefore that Tanglewood, Inc. took with notice all of the outstanding and unrecorded deeds. Our holding above makes it unnecessary to reach that point. Appellant's points one through nine are overruled.

Appellant's contention that there existed no basis in the evidence for the judgment of $7,818.17 we think is sound. Hortenstine, the major stockholder of Lake Stockton, Inc., and also an officer and shareholder in a newly formed Lake Tanglewood corporation, participated in the negotiations of the sale of all the stock of Lake Stockton, Inc. to Tanglewood from the beginning. The record shows that Hortenstine agreed with S. G. (Roy) Stockton that certain cash and properties would be retained by Hortenstine and Stockton in a ratio to their stock ownership in Lake Stockton, Inc. Exhibit No. 29 identified by both Stockton and Hortenstine as being the settlement sheet and agreement as to certain properties and cash of Stockton, Inc. that they would keep, individually listed as one of the items to Roy (S. G. Stockton), "$7,818.17 account rec." This item apparently represented the notes receivable to Stockton, Inc. in December 1965 before the closing of the deal by the transfer of the stock owned by Stockton and Hortenstine to Lake Tanglewood, Inc. The amount apparently was represented by notes executed by Gattis, Maddox, Houdashell and Britain. Maddox had executed two notes, and Gattis, Houdashell and Britain one each. Hortenstine testified that he went with Stockton to see Gattis in regard to Gattis paying off his note in advance. Further, Hortenstine testified on cross examination in reference to the notes in question as follows:

"Q. Well, did you ever see the notes in settling up?

A. No I sure didn't.

Q. Well in settling up you say he got the notes?

A. He got whatever there was, yes, but I didn't see them.

Q. Whatever you did in dividing up— they belonged to him after that, didn't they?

A. Yes, after our settlement they did belong to him.

Q. Didn't you sign the notes over to him, or endorse them?

A. Well, I don't remember about that.

Q. But anyway he got them in his share?

A. Yes, sir."

The record reflects that three out of the five notes involved were re-executed on December 30, 1965 and one was made payable to "S. G. Stockton" and two payable to "Robert Hortenstine and S. G. Stockton." As these were paid to S. G. Stockton, Stockton marked the notes paid and issued letters of indemnification to Gattis and Maddox. The record is silent as to the Houdashell and Britain notes. In fact, no testimony was introduced reflecting how much, if any, was paid or remained to be paid on the Houdashell and Britain notes.

If Tanglewood, Inc. is bound by the testimony of Hortenstine and the knowledge of Hortenstine is imputed to Tanglewood, then Tanglewood is entitled to no recovery on the notes. Appellees urge that Hortenstine, in dealing with Stockton in regard to his settlement, was not representing Tanglewood, Inc. but only himself, and that a corporation officer who is personally interested in a transaction with the corporation and the other party to the transaction knows of this interest, the corporation is not chargeable with the knowledge of the officer, citing Goldstein v. Union National Bank, 109 Tex. 555, 213 S.W. 584 (1919). We do not agree that this case stands for that proposition and quote from page 587 of that case:

"Clearly, where a corporation having, through any duly authorized representative who is in no wise disqualified, knowledge or notice of the facts in-

volved in the making of such a contract by such general officer in its own name and behalf, claims any benefit of such contract, the corporation must abide such contract as a whole."

Hortenstine and Stockton entered into an agreement to divide certain properties of the old corporation, Stockton, Inc., based upon their respective stock ownership. Hortenstine is bound by that agreement both in the terms favorable to him and those that are not favorable to him. Being an officer and shareholder of Lake Tanglewood, Inc., Hortenstine would benefit, although only indirectly through his stock ownership, by having Tanglewood, Inc. recover from Stockton. We think it would stretch the bounds of reason to say that Tanglewood, Inc. is not bound by the acts of Hortenstine for one purpose but is so bound for another when Hortenstine was an officer of both the old corporation and the new corporation from its inception and upon its purchase of the stock of the old corporation.

Appellees' contention that the letter agreements of August 24 and 25, 1966, some eight months after the closing of the transaction, executed by both Hortenstine as agent of Tanglewood, Inc. and Stockton individually, compels the rendition of judgment for Tanglewood, cannot stand. Hortenstine's testimony that the notes belong to Stockton is binding upon Tanglewood, Inc. Stockton is not claiming any other "dues payable after January 1, 1966 and all accounts receivable and payments receivable after January 1, 1966 belong(ing) to Lake Tanglewood, Inc." At the time of the closing of the deal by the conveyance of the stock in Lake Stockton, Inc. to Tanglewood, Inc., no reference is made in the record as to any disposition of accounts receivable after January 1, 1966. We do not think that the case cited by appellees, Amarillo National Bank v. Harrell, Tex. Civ.App., 159 S.W. 858, applies herein.

Appellees cite Goldstein v. Union National Bank, supra, for the rule that a corporation is bound by the knowledge of a sole representative of the corporation in a matter or transaction, stating that there were other representatives of Tanglewood, Inc. in this transaction taking it out of the rule. We agree with the rule. We do not agree that this case takes it out for the reason that Hortenstine, according to the record before us, was the only representative of Tanglewood in the particular matter or transaction under consideration here. A corporation may have many officers or representatives, but if only one of the corporate representatives has knowledge of a particular matter or transaction, then the sole representative rule applies.

We affirm the action of the trial court in cancelling the conveyance on Lot 7, Block 15 to Stockton and the judgment of Tanglewood, Inc. against Stockton in the amount of $795.00. We reverse and render that part granting judgment of $7,818.-17 against Stockton.

Affirmed in part and reversed and rendered in part.