The NATIONAL BANK OF COMMERCE et al., Appellants,

v.

James L. MAY, M.D. et ux., Appellees.

No. 5243.

Court of Civil Appeals of Texas, Eastland.

June 14, 1979.

Rehearing Denied July 5, 1979.

Hubert D. Johnson, Johnson & Cravens, John A. Gilliam, Jenkens & Gilchrist, Royal Brin, Jr., Strasburger & Price, Dallas, for appellants.

Sandy M. Sandoloski and Michael W. McManus, Weinberg, Sandoloski & McManus, Dallas, for appellees.

DICKENSON, Justice.

The first question is which innocent party must bear the loss where a valid deed was fraudulently altered by changing the property description after its execution and delivery, but prior to recordation. The next question is the effect of a deed back to one of the two defrauded grantors which recited that it was "subject to" a lien which would otherwise have been invalid as to the property interest which is in dispute. The last major question is whether punitive damages can be recovered from one of the defendants when no actual damages or other relief was adjudged against that defendant.

The plaintiffs, Dr. James L. May and wife, Beulah Leona May, sued James M. Parks, their former friend and co-owner of an 8.5 acre tract of land; Home Realty Company, Inc., grantee under an altered deed to the 8.5 acre tract; The National Bank of Commerce, an innocent party which advanced money in good faith and claimed the 8.5 acre tract under a foreclosure of its deed of trust; and Southwest Land Title Co., the title company which prepared the disputed deed and attended to its recordation. The Bank filed a counterclaim to remove the cloud on its claim to full title in the property. After a trial by jury, judgment on the verdict was rendered in favor of plaintiffs as to their undivided interest in the land and against the Bank on its counterclaim. Judgment on the verdict was also rendered in favor of plaintiffs for exemplary damages against James M. Parks in the sum of $300,000 and for exemplary damages against Southwest Land Title Co. in the sum of $400,000. No actual damages were awarded. The Bank and the Title Company perfected separate appeals. Parks did not appeal, and the judgment as

to him is final. We affirm the judgment of James L. May and Beulah Leona May against the Bank for their interest in the land. We reverse the judgment against Southwest Land Title Co., severing and remanding that cause.

The verdict of the jury can be summarized as follows:

## SPECIAL ISSUE NO. 1

On or about January 13, 1971, James M. Parks mislead Dr. James L. May and wife, Beulah Leona May, as to the necessity for the execution of a deed to Home Realty Company, Inc. covering an undivided 93,615/350,000 (26.75%) interest in 8.5 acres of land.

## SPECIAL ISSUE NO. 2

Dr. James L. May and wife, Beulah Leona May, did not intend to deed all of their right, title and interest (73.25%) in said 8.5 acres of land to Home Realty Company, Inc.

## SPECIAL ISSUE NO. 3

The deed dated January 13, 1971, from Dr. James L. May and wife, Beulah Leona May, and James M. Parks to Home Realty Company, Inc. was altered after Dr. and Mrs. May signed it, and prior to being filed for record, without their consent or knowledge.

## SPECIAL ISSUE NO. 4

James M. Parks altered the deed dated January 13, 1971, after Dr. and Mrs. May signed it and before it was filed of record.

## SPECIAL ISSUE NO. 5

James M. Parks altered said deed with the help of Buck Farish (a vice-president of Southwest Land Title Co.) and an employee of Southwest Land Title Co.

## SPECIAL ISSUE NO. 6

James M. Parks acted with malice at the time he defrauded plaintiffs.

SPECIAL ISSUE NO. 7

$300,000 should be awarded against James M. Parks as exemplary damages.

SPECIAL ISSUE NO. 8

Southwest Land Title Co. acted with malice at the time it defrauded plaintiffs.

SPECIAL ISSUE NO. 9

$400,000 should be awarded against Southwest Land Title Co. as exemplary damages.

SPECIAL ISSUE NO. 10

The fair market value of the undivided 256,385/350,000 (73.25%) interest in the 8.5 acre tract, as of January 3, 1971, was $275,000.

SPECIAL ISSUE NO. 11

There was such unity of interest and ownership between Home Realty, Inc. and James M. Parks that there was no distinction between them.

## BACKGROUND

James L. May is a medical doctor. James M. Parks was a real estate developer. They served together on a bank's board of directors, and they became friends. Dr. and Mrs. May owned 8.5 acres of land, and they agreed to exchange an undivided 93,615/350,000 (26.75%) interest in this tract of land for a 39.5% interest in a real estate partnership which owned apartment units. Dr. and Mrs. May executed a deed in favor of Parks on October 1, 1970, which was on a printed form and which had a taped-on attachment showing the metes and bounds description of the property.

Dr. May testified that in November or December of 1970, Parks asked them to agree to let him borrow $100,000 on his 26.75% interest in the 8.5 acre tract for six to eight months to take care of another project of his, one in which they had no interest. As an accommodation to him, on March 1, 1971, they signed a second deed, along with Parks, for the same 26.75% in-terest in the 8.5 acre tract which had previously been conveyed to Parks. The second deed showed Home Realty Co., Inc. as grantee. Parks was the owner of Home Realty, a corporation which had been organized to borrow money at interest rates higher than 10% per annum. The second deed also had a taped-on attachment for the property description. Dr. May testified that he and his wife read the deed before signing it and that it only conveyed the 26.75% interest which belonged to Parks. Parks claimed the Fifth Amendment and refused to testify. James LeRoy Lewis, a questioned document examiner, testified that he believed the taped-on attachment had been removed and altered by cutting off the portion which restricted the conveyance to the 26.75% interest. When the altered attachment was taped back to the deed, it appeared to convey all of the undivided interest of Dr. and Mrs. May as well as the interest of Parks.

Buck Farish testified that he was a vice-president of Southwest Land Title Company, that he gave instructions for the preparation of the deed, that it covered the full interest, and that it was not altered. The jury did not believe him.

The Bank extended credit to Home Realty Co., Inc. and secured a note dated April 9, 1974, for the sum of $400,000 plus interest. This note was in renewal and extension of prior notes from Home Realty dated November 13, 1972, and August 28, 1973. It should be noted that all of the loans were subsequent to the alteration of the deed and that record title to the entire 8.5 acres was in Home Realty when the Bank made the loans. The note was secured by a Deed of Trust which purported to cover 100% of the ownership of the 8.5 acre tract. A title binder was issued in favor of the Bank because the recorded instruments indicated that Home Realty was the sole owner of the land. The Deed of Trust was foreclosed on July 1, 1975, and the Bank became the apparent record owner of the property.

After the Bank secured its lien on the property, but prior to the foreclosure, Dr. May learned that Home Realty owned the

apparent record title to 100% of the 8.5 acre tract and that it had subjected all of its apparent interest to a lien in favor of the Bank.

At Dr. May's insistence, a Warranty Deed was executed under date of August 12, 1974, by Home Realty Co., Inc. through James M. Parks, President, to James L. May (not naming Mrs. May) describing the 256,385/350,000 (73.25%) undivided interest which belonged to Dr. and Mrs. May and which stated:

> further consideration that the Grantee herein takes the hereinafter described property SUBJECT TO, but in no wise assuming, the unpaid balance owing on that one certain promissory note payable to the order of NATIONAL BANK OF COMMERCE OF DALLAS, which said note is further secured by Deed of Trust.

. . .

Dr. May also insisted that Parks secure a release of the Bank's lien as to the 73.25% interest, but that was never done.

### THE BANK'S APPEAL

National Bank of Commerce argues six points of error. The first point claims that the trial court erred in "reforming" the altered deed and in partially setting aside the foreclosure so as to adversely affect the rights of the Bank which was an innocent party and bona fide lender. We disagree.

While the record is clear that the Bank was innocent of any wrongdoing, this fact is not material to our decision of the case. It would be a significant factor if plaintiffs were asserting an equitable right to reform or set aside a voidable instrument; however, the plaintiffs here were seeking a declaration that the altered deed was void, not merely voidable, as to the additional property rights purportedly conveyed by the alteration. Plaintiffs cite *Nabors v. Nabors*, 230 S.W. 1109 (Tex.Civ.App. —El Paso 1921, writ ref'd), and *Stockton v. Lake Tanglewood & Skybolt, Inc.*, 441 S.W.2d 575 (Tex.Civ.App.—Amarillo 1969, no writ), for the proposition that the material alteration of the deed, after its execution and delivery but prior to recordation, is of no effect and that the deed is effective as originally written, even as to a purchaser in good faith.

*Stockton v. Lake Tanglewood & Skybolt, Inc.*, supra, states that:

> The rule regarding alterations of conveyances, as we understand it, is that a material alteration *after* the execution and delivery of said instrument is of no effect and the instrument stands as originally drawn.

4 Am.Jur.2d, Alteration of Instruments § 33 reads in part as follows:

> The general rule is that the subsequent alteration of an instrument under and by virtue of which the title to property has become vested in the grantee therein does not invalidate the instrument insofar as it operates as a conveyance, and therefore does not in any way affect the title of such grantee to the property so conveyed or affect the interpretation of the deed as to the quantum of the estate conveyed. This rule is based upon the theory that an estate which may exist without a deed is not destroyed by the unauthorized material alteration or even the fraudulent cancellation and destruction of the deed conveying it, by the holder thereof or his agent. Such alteration does not divest the original grantee of the title, or revest such title in the grantor, although done by mutual consent and with a view to that object, though, in the latter case, it would seem that the grantee is afterward estopped from asserting title under the deed; nor will the unauthorized alteration of a deed by the grantee so as to make it describe land not conveyed thereby entitle the grantor, by a suit in equity, to set aside his deed and be reinvested with the title conveyed. *If, after execution, a conveyance of land is altered by the grantee or with his privity so as to make it describe land not granted thereby, the vested title to the land as originally described in the deed is not divested; but of course the deed does not operate to transfer title to the land included in the deed by alteration, even as to a purchaser in good faith without notice of the altera-*

tion. Accordingly, the grantor may not sue to recover damages for the land included by the alteration, since title to such land has not been lost; but an action may be brought to remove the cloud on the title to the land not covered by the deed as originally executed. (Emphasis added)

See also, 3A C.J.S. Alteration of Instruments § 19.

We also note the early case of *Bowser v. Cole*, 74 Tex. 222, 11 S.W. 1131 (1889), where the mortgagee sought to recover on a mortgage which had been altered after its execution and delivery but prior to recordation. No attempt was made to recover on it as originally executed, and the court held that the material alteration made the instrument void.

■ Bank's second point claims that plaintiffs' lawsuit was barred by the four-year statute of limitations. We disagree. Article 5529, Tex.Rev.Civ.Stat.Ann. (1958) is not applicable because plaintiffs were not seeking the equitable remedies of reformation or cancellation. Plaintiffs sought a declaration that the altered deed was void as to the property interest which was added by the alteration. See *Hardeman v. Mitchell*, 444 S.W.2d 651 (Tex.Civ.App.—Tyler 1969, no writ).

■ Bank's third point claims that the undisputed evidence shows that the altered *deed conveyed all of plaintiffs' interest in* the 8.5 acre tract to the Bank's predecessor in title. We disagree. There was evidence, and it was sufficient, to support the jury's findings that the disputed deed was altered after its execution and prior to recordation. The cases cited by Bank on this point are not applicable. The altered deed only conveyed the undivided 93,615/350,000 (26.75%) interest owned by James M. Parks. It did not convey the undivided interest owned by Dr. and Mrs. May.

■ Bank's fourth point claims that the trial court erred in setting aside the Bank's deed of trust because Dr. and Mrs. May recognized and ratified it. We disagree. Bank relies upon the cases of *J. P. Wooten Motor Co. v. First Bank of Swenson*, 281 S.W. 196 (Tex.Comm.App.—1926, jdgmt adopted) and *McMullan v. San Antonio Joint Stock Land Bank*, 78 S.W.2d 669 (Tex. Civ.App.—Eastland 1934, writ ref'd) which recognize the rule that:

If the *purchaser* takes the property "subject" to the lien, then he agrees that the lien is valid and cannot dispute it thereafter. (emphasis added)

Those cases are not applicable because Dr. and Mrs. May were not "purchasers." There was merely a reconveyance of record title to the interest which they already owned.

■ *Humble Oil & Refining Co. v. Clark*, 126 Tex. 262, 87 S.W.2d 471 (1935, opinion adopted) and *Kunkel v. Kunkel*, 515 S.W.2d 941 (Tex.Civ.App.—Amarillo 1974, writ ref'd n. r. e.) make it clear that a void instrument can be made valid by adoption, ratification or confirmation. *Kunkel* also points out:

Ratification may be said to be the adoption or confirmation by a person, *with knowledge of all material facts*, of a prior act which did not then legally bind him and which he had the right to repudiate, but which, by the ratification, is given retroactive effect as if originally performed by him. See *Brock v. Jones*, 16 Tex. 461 (1856). (emphasis added)

■ The record in this case does not establish as a matter of law that Dr. May had "knowledge of all material facts" when he accepted the reconveyance. Tex.R.Civ.P. 279 provides that: ". . . all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived . . . ."

Moreover, the case of *Graham v. Oakes*, 32 S.W.2d 916 (Tex.Civ.App.—Waco 1930, writ ref'd) states that:

Though the property is conveyed subject to a specific mortgage, if the amount thereof has not been deducted from the purchase price, the grantee may attack the validity of such incumbrance.

The record is clear that Dr. May knew that Home Realty had secured record title to the full 100% interest in the 8.5 acre tract and that Home Realty had executed a note and deed of trust covering the full 100% interest in favor of The National Bank of Commerce; however, the record is also clear that Dr. May did not have knowledge of "all material facts" when the "subject to" deed was executed and recorded.

Bank's fifth point is that the trial court erred in reforming the altered deed because there was no evidence to support reformation or cancellation. This point is overruled. Dr. and Mrs. May sought a declaration that the deed was void as to the alteration. Their cause of action was not for reformation or cancellation of a voidable deed. See the discussion of Bank's first point of error.

■ Bank's sixth point is that the trial court erred in awarding judgment against the Bank for the land and at the same time entering judgment against James M. Parks "for $300,000 necessarily based on damages for loss of title." We disagree because the judgment against Parks was not for loss of title. That judgment was based upon the jury's assessment of punitive damages, not upon compensatory damages for loss of title.

### THE TITLE COMPANY'S APPEAL

Southwest Land Title Co. has briefed five points of error. The first point claims that the trial court erred in entering judgment for exemplary damages against the Title Company in the absence of judgment for any actual damages. We also note that no award of any kind was made against the Title Company except for the award of exemplary damages. This point of error is sustained.

■ We recognize the rule that exemplary damages can be awarded in connection with equitable relief which is awarded against a willful, malicious or fraudulent wrongdoer. *International Bankers Life Insurance Company v. Holloway*, 368 S.W.2d 567 (Tex.1963). In this case, Dr. and Mrs. May sought a declaration that the disputed deed was void (not merely voidable, which would have required the equitable relief of reformation or cancellation) as to the 73.25% interest in the property which was added by the alteration of the property description. It should also be noted that no actual damages of any kind were recovered.

The case of *Hughes v. Belman*, 200 S.W.2d 431 (Tex.Civ.App.—Austin 1947, writ ref'd n. r. e.) concerns the situation where the plaintiffs recovered actual, but no exemplary, damages against one defendant and exemplary, but no actual, damages against the other defendant. The court said:

> We do not believe that the rule denying the recovery of exemplary damages, in the absence of recovery of actual damages, should be extended so as to permit the recovery of actual damages against one defendant and exemplary damages against another defendant. The recovery of exemplary damages is not allowed as a matter of right or as compensation but only as an incident to and enhancement of the actual damages.

See also *Cherry v. Turner*, 560 S.W.2d 794 (Tex.Civ.App.—Austin 1978, writ ref'd n. r. e.); *Crawford Chevrolet, Inc. v. Rowland*, 525 S.W.2d 242 (Tex.Civ.App.—Amarillo 1975, writ ref'd n. r. e.); Annotation, Actual Damages as a Necessary Predicate of Punitive or Exemplary Damages, 17 A.L.R.2d 527 (1951).

*Teas v. Republic National Bank of Dallas*, 460 S.W.2d 233 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.) states the rule as follows:

> While our Supreme Court in *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex.Sup.1963), has held that a litigant may recover exemplary damages in actions for equitable relief, it is also true that there must be some actual loss or injury to support the recovery of such damages. It has been the law of this state for many years that exemplary damages cannot stand alone, unsupported by proof of actual loss or injury. *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397 (1934); 17 Tex.Jur.2d Damages, § 177, pp. 243–244.

See also *Adam v. Harris*, 564 S.W.2d 152 (Tex.Civ.App.—Houston (14th Dist.) 1978, writ ref'd n. r. e.).

*Bibby v. Preston*, 555 S.W.2d 898 (Tex. Civ.App.—Tyler 1977, no writ) was a suit to remove a cloud from title and for actual and exemplary damages. The court stated:

> There is no question but that exemplary damages may be awarded in a suit to remove cloud on title. *Reaugh v. McCollum Exploration Co.*, 139 Tex. 485, 163 S.W.2d 620, 622 (Tex.1942). However, without proof of actual damages, there can be no award for exemplary damages. *Phillips v. Wertz*, 546 S.W.2d 902 (Tex. Civ.App.—Dallas 1977, writ ref'd n. r. e.). Therefore, that portion of the judgment awarding actual and exemplary damages is reversed and remanded for full development of evidence on damages.

Tex.R.Civ.P. 434 provides in part that: ". . . a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested. . . ." Our ruling on the Title Company's first point of error disposes of that appeal, and we will not discuss the other points.

### CONCLUSION

James M. Parks did not appeal, and the judgment is final as to him. We affirm the judgment in favor of James L. May and Mrs. Beulah Leona May for their undivided 256,385/350,000 (73.25%) interest in the 8.5 acre tract. We affirm that portion of the judgment which awarded The National Bank of Commerce the undivided 93,615/350,000 (26.75%) interest in the 8.5 acre tract which had been owned by Home Realty Co., Inc. prior to the foreclosure. The judgment against Southwest Land Title Co. is reversed, and that cause is severed and remanded.