**John DURKAY, Trustee of the Whitehead Bankruptcy Estate of Marvin Whitehead, et al., Appellants,**

v.

**MADCO OIL COMPANY, INC., et al., Appellees.**

No. 13–91–604–CV.

Court of Appeals of Texas, Corpus Christi.

April 15, 1993.

Opinion Granting Rehearing Oct. 14, 1993.

Rehearing Overruled Dec. 9, 1993.

---

David B. Gaultney, Mehaffy & Weber, Beaumont, for appellants.

Warren R. Taylor, Floyd, Taylor & Riley, Houston, W. Ted Minick, Winstead, Sechrest & Minick, Dallas, Gary M. Jewell, and Jeffrey A. Shadwick, Winstead, Sechrest & Minick, Houston, for appellees.

Before NYE, C.J.,* and DORSEY and GILBERTO HINOJOSA, JJ.

* Former Chief Justice retired April 30, 1993.

## OPINION

DORSEY, Justice.

Durkay, a bankruptcy trustee, appeals from a take-nothing judgment in this wrongful foreclosure action. Durkay contends that three consecutive foreclosure sales on fourteen oil and gas leases, now claimed by the bankruptcy estate, were void. A jury found that the initial foreclosure sale was wrongful but awarded no damages, finding that the bankruptcy debtor ratified the trustee's deed executed after the sale. By seventeen points of error, Durkay essentially complains of the trial court's failure to set aside the foreclosure sales. The appellees assert two cross-points concerning the issues of *res judicata* and statute of limitations. We reverse the trial court's judgment, set aside the foreclosure sales, and return the property to the bankruptcy estate.

Appellee Madco Oil Company and Marvin Whitehead, d/b/a Whitehead Oil Company,[1] entered into a business relationship in late 1981 or early 1982. In 1983, Madco loaned Whitehead $842,314.65, for which Whitehead pledged as collateral the fourteen oil and gas leases. Ultimately, Madco foreclosed on those leases in March or April of 1984 (the date of the foreclosure was disputed at trial).[2] That sale is the crux of our disposition of this appeal.

Four of the leases foreclosed upon in 1984 were the subject of a pending state court action filed by local landowners against Whitehead. The landowners alleged that Whitehead removed, without compensating them, their ownership interest in oil and gas produced from the four leases. As a result, the leases were held in receivership by the court at the time of the 1984 foreclosure sale, pending the outcome of the conversion suit.

The landowners' action later resulted in a $1.3 million judgment against Whitehead.[3] The trial court ordered an execution sale of three of the four leases and Madco bought them on September 19, 1985 for $500. Durkay contended below that this 1985 execution sale, too, was void.

Madco pledged all fourteen leases to Allied Bank of Texas, now First Interstate Bank, both of which are appellees here, as collateral on a loan.[4] Allied/First Interstate foreclosed on the property in October, 1986, purchasing the property for itself. This is the third foreclosure sale Durkay complained of below.

Durkay brought suit against these appellees alleging that each of the three sales of Whitehead's oil and gas leases was a wrongful foreclosure. While a jury found the 1984 sale to be wrongful, they did not find that the sale proximately caused Whitehead damages and found that Whitehead ratified the sale and the deed evidencing it. The jury found no irregularity in the 1985 execution sale which caused the leases to be sold for a grossly inadequate price. They also found that Allied/First Interstate was a good faith purchaser at its October, 1986 foreclosure sale. Based on these jury findings, the trial court entered a take-nothing judgment in favor of appellees.

By points of error one and two, Durkay, on behalf of the Whitehead estate, contends that the 1984 sale was void as a matter of law. He asserts on appeal that the sale was not held on the first Tuesday of the month,[5] that the note was not in default, and that Madco had no authority to foreclose on all or part of the fourteen leases. At trial, when the jury was asked whether they found the 1984 foreclosure sale wrongful, they were instructed, in pertinent part:

---

1. Whitehead filed for bankruptcy on February 3, 1986. Durkay, appellant here, was appointed receiver of the Whiteheads' bankruptcy estate and intervened in this action, replacing Whitehead as the party plaintiff.

2. Appellee William Tillman was the appointed trustee for the property and he conducted the foreclosure sale.

3. Madco ultimately purchased that judgment from the landowners.

4. Appellee Head Oil was formed in 1985, and that company bought the fourteen leases from Madco, subject to the liens held by Allied/First Interstate.

5. Durkay maintained that the sale occurred on March 12, 1984, while Madco and Tillman contended that it was held on April 3, 1984.

You are instructed that a foreclosure is "wrongful" if any of the following occurred:

(1) The Whitehead Promissory Note was current at the time of the foreclosure.

or

(2) The foreclosure did not occur on the first Tuesday of the month.

or

(3) An irregularity occurred in connection with the foreclosure sale . . . which caused or contributed to cause the property to be sold for a grossly inadequate price.

The question did not specifically ask the jury to determine whether the 1984 sale was void. As a result, the appellees objected to the issue and instruction during the charge conference, asserting that a mere finding by the jury that the foreclosure was wrongful would not be the equivalent of finding the sale void as well. The trial court overruled the objection.

Any one of the three improprieties listed above would render the 1984 foreclosure sale void. *See Bradford v. Thompson,* 470 S.W.2d 633, 636 (Tex.1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1174, 31 L.Ed.2d 232 (1972) and *Slaughter v. Qualls,* 162 S.W.2d 671, 675 (Tex.1942) (foreclosure sale void when note not in default at that time); *McLaren v. Jones,* 89 Tex. 131, 33 S.W. 849, 850 (1896) (sale not held on first Tuesday of month is void); *Pentad Joint Venture v. First Nat'l Bank of La Grange,* 797 S.W.2d 92, 96 (Tex.App.—Austin 1990, writ denied) and *Jinkins v. Chambers,* 622 S.W.2d 614, 615 (Tex.App.—Tyler 1981, no writ) (irregularity in sale causing grossly inadequate price renders sale void).

The facts were greatly in dispute at trial regarding whether the 1984 sale occurred on the first Tuesday of the month, whether the note was in default, and whether irregularities in the sale resulted in a grossly inadequate price for the property. The jury's finding that the 1984 sale was wrongful, regardless of the fatal defect found, was the legal equivalent of finding that the sale was void as a matter of law.

A purchaser at a foreclosure sale obtains only that title the trustee had authority to convey. *First Southern Properties, Inc. v. Vallone,* 533 S.W.2d 339, 341 (Tex.1976). When a trustee forecloses on property by means not enumerated in the deed of trust, he has conveyed the property without the authority to do so. *Slaughter,* 162 S.W.2d at 675; *Henke,* 586 S.W.2d at 620; *Ford v. Emerich,* 343 S.W.2d 527, 532 (Tex.Civ. App.—Houston 1961, writ ref'd n.r.e.). A trustee's strict compliance with the terms of the deed of trust includes his following statutory prerequisites for the sale. These prerequisites include, among others, that the sale must be held on the first Tuesday of the month. TEX.PROP.CODE ANN. § 51.002 (Vernon 1984). Failure to comply with these prerequisites strips the trustee of his authority to sell the property and will render the foreclosure sale void.

When a foreclosure sale is void, title to the property does not pass to the purchaser, as he cannot acquire it. *Henke v. First Southern Properties, Inc.,* 586 S.W.2d 617, 620 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). Consequently, the trustee's deed evidencing the sale is void.

The jury found, as a matter of law, that the 1984 foreclosure sale was void. Appellees contend that this is of no moment because the jury also found that Whitehead ratified the trustee's deed executed at the conclusion of the 1984 sale.

It is well settled that a grantor cannot, by subsequent acts and declarations, ratify a void deed. *Kunkel v. Kunkel,* 515 S.W.2d 941, 948 (Tex.Civ.App.1974); *Pure Oil Co v. Swindall,* 58 S.W.2d 7, 11 (Tex.Com.App. 1933); 26 C.J.S. *Deeds* § 67a (1956). The Court in *Pure Oil* explains that "it is essential to consider whether the instrument, if genuine, would accomplish the apparent purpose of its execution." *Id.,* 58 S.W.2d at 10. Because no title could pass to Madco as a result of the sale, the deed could not accomplish the purpose of its execution and was therefore void.

When a foreclosure sale is void, the debtor may bring a cause of action to set aside the sale, cancel the trustee's deed, and recover title to the property. *Slaughter,* 162 S.W.2d at 674; *Owen v. Grimes,* 539 S.W.2d 387, 389–90 (Tex.Civ.App.—Tyler 1976, writ ref'd

n.r.e.). In the alternative, the debtor may seek damages for conversion of the property.

Appellees contend that Durkay's suit to set aside the 1984 sale is barred by limitations. They maintain that a four-year limitations period applies, as prescribed by the Residual Limitations Period under TEX.CIV.PRAC. & REM.CODE ANN. § 16.051 (Vernon 1986). *See Gonzales v. Lockwood Lumber Co.,* 668 S.W.2d 813, 815 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). In *Gonzales,* a mortgagor sued the mortgagee for money damages resulting from the wrongful foreclosure of her property. The Houston court found that the central issue of the case was whether the terms of the deed of trust were complied with when the foreclosure sale was executed on the mortgagee's property. The Court held that this issue was one based on a written contract and applied the section 16.-051 four-year statute of limitations. *Gonzales,* 668 S.W.2d at 815.

Appellees maintain that the primary issue in this lawsuit, too, is whether the terms of the deed of trust were complied with during the execution of the 1984 foreclosure sale. Thus, they contend that the four-year limitations period applies here as well. This case is distinguishable from *Gonzales,* however, in that here Durkay brought his cause of action to set aside this foreclosure sale, to cancel the trustee's deed, and, most importantly, to recover the property for the bankruptcy estate. TEX.CIV.PRAC. & REM.CODE § 16.051 expressly excludes from its applicability actions for the recovery of real property.

Further, as both sides concede, it is well established that when a deed is void, an action to recover the property conveyed by that deed is not barred by the four-year statute. *Slaughter,* 162 S.W.2d at 674; *National Bank of Commerce v. May,* 583 S.W.2d 685, 690 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.).

A ten-year statute of limitations applies to the recovery of real property in certain instances. *See* TEX.CIV.PRAC. & REM.CODE § 16.033 (Vernon 1986). A party may recover property conveyed by an instrument, such as a deed, that is executed by a trustee without record of his authority to do so. TEX.CIV.PRAC. & REM.CODE § 16.033(a)(7) (Vernon 1986). The deed may be set aside within ten years after the day it was recorded with the clerk of the county in which the property was located. TEX.CIV.PRAC. & REM. CODE ANN. § 16.033(a)(7).

The trustee's deed here, executed after the void foreclosure sale and without the trustee's authority to do so, was filed in the Jasper County Clerk's Office on April 6, 1984. Whitehead did not attempt to set the sale aside at that time, but rather apparently acquiesced to it. The jury found that Whitehead knew about the 1984 foreclosure sale no later than May 1, 1984; this finding is not contested on appeal. Whitehead alleged below, among other things, that his note was not in default at the time of the foreclosure. Thus, on the date that Whitehead learned about the sale, May 1, 1984, he knew or should have known that the foreclosure sale was void. Whitehead could have at that time brought a cause of action against Madco for purposes of canceling the deed and setting aside the conveyance.

Instead, Whitehead accepted the foreclosure sale. Our review of the record shows that Betty Whitehead Production Company, the original operator of the fourteen leases at issue, filed Form P–4's with the Texas Railroad Commission on June 4, 1984, for the purpose of changing the name of the operator on a number of the fourteen leases from Betty Whitehead Production Co. to Madco Oil Co., Inc.

Equally important, the record contains a copy of a Plaintiff's Original Petition, filed by Whitehead against Madco on October 30, 1984. In that suit, Whitehead sought a temporary restraining order and temporary injunction preventing Madco from foreclosing on a fifteenth lease, not at issue in this suit, that secured the $842,000 note. Whitehead contended in the petition,

> On or about the 12th day of March, 1984, the trustee, William A. Tillman sold [the fourteen leases] to the holder of the note Madco Oil Co., Inc. **for the full balance owing on the debt.**
>
> \* \* \* \* \* \*

The above described property located in Aransas County [the fifteenth lease] is security for the same note as the [fourteen leases] served as security for. **Such note has been fully satisfied and paid.** (emphasis added).

On February 3, 1986, Whitehead filed for bankruptcy protection. The Bankruptcy Court appointed Durkay as trustee of the bankruptcy estate on November 4, 1986. At that time, Durkay stepped into the shoes of Whitehead, the debtor, assuming all rights and liabilities held by the estate at the time of the bankruptcy filing. The mortgagor, a party in privity with the mortgagor, or a third party with a property interest that will be affected by a foreclosure sale has standing to contest the validity of the sale as it relates to the deed of trust. *Goswami v. Metropolitan Sav. & Loan. Ass'n,* 751 S.W.2d 487, 489 (Tex.1988). Thus, Durkay, having stepped into Whitehead's shoes, had the right to set the void 1984 foreclosure sale aside. The ten-year statute of limitations had not yet run. In fact, the limitations period would not run until 1994.

The parties vigorously dispute the date on which Durkay, on behalf of the estate, asserted a claim to set aside the 1984 sale. The appellees maintain that Durkay sat idle until July 31, 1989, at which time he filed an amended petition naming First Interstate Bank, Head Oil, and William Tillman as defendants in this lawsuit. Appellant contends that he asserted his right to set the sale aside long before. Accepting either position as true, we find that Durkay, as the mortgagor's trustee in bankruptcy, began efforts to set this sale aside, to cancel the trustee's deed, and to pursue a retrieval of the property well before the running of the limitations period in 1994.

The void 1984 sale having failed to transfer Whitehead's title to the property to Madco, we must now look to the validity of the 1985 constable's sale to ascertain whether title to the four leases subject to the landowners' action passed to Madco. The sale was held on September 19, 1985. Real property taken by virtue of an execution shall be sold at public auction on the first Tuesday of the month. Tex.R.Civ.P. 646a. September 19th was not the first Tuesday of September, 1985. This sale, too, was void as a matter of law.

With regard to the 1986 sale, Madco had previously pledged the fourteen oil and gas leases to Allied as collateral on a loan. When Head Oil was formed in 1985, the company bought the leases from Madco, subject to the liens held by Allied. Allied Bank foreclosed on the fourteen leases in 1986 in order to satisfy the debt. However, because the 1984 and 1985 foreclosure sales were void, Madco did not acquire title to those leases and could not have pledged them to Allied as collateral. Moreover, Head Oil could not have purchased title to the leases from Madco. Therefore, the property the subject of Allied's 1986 sale was not Head Oil's to foreclose on. Right and title to the properties having never passed to Madco originally, Allied could not have acquired that title from Head Oil.

As a result, the property must be treated as though it never changed hands. Durkay, as bankruptcy trustee, stands in the shoes of the true owner of the property, the debtor Whitehead. Durkay has properly and timely filed an action to set aside the original sales, cancel the trustee's deeds, and reacquire the property. We find that the property should therefore be returned to Durkay, as trustee of Whitehead's estate. Points of error one and two are sustained.

By two cross points, appellees contend that *res judicata* and limitations apply to bar Durkay's action. We have previously held the inapplicability of a four-year statute of limitations to this case. A ten-year period applies when setting aside a void foreclosure sale. We now turn to the applicability of *res judicata.*

During the pendency of the 1985 landowners' action against Whitehead, Madco moved to intervene in the suit. Madco sought to protect the interest it presumed it acquired from the 1984 foreclosure sale in the oil and gas leases. The trial court permitted the intervention.

A jury found Whitehead liable for conversion of the landowners' oil and gas, and the court entered a $1.3 million judgment against

him. The final judgment signed by the court recited, in part, "and it appearing that MADCO OIL COMPANY, INC. has succeeded the interest of MARVIN WHITEHEAD ... in the oil, gas, and mineral leases described above...." The court ordered an execution sale on the leases for the purpose of satisfying a portion of the judgment. As discussed, Madco purchased the leases at the void 1985 execution sale for $500. The court nevertheless ordered that the leases be turned over to Madco. Appellees contend that this judgment and order, not contested by Whitehead, preclude him from now denying Madco's ownership of the property in 1985.

Appellees further assert that a bankruptcy court order is binding on Whitehead. After Madco filed for bankruptcy protection, the company sought to sell what it presumed to be its interest in the fourteen leases to Head Oil. Madco moved for the bankruptcy court's permission to conduct the sale. Whitehead was allowed to intervene in order to object to the sale and allege that he still owned the leases.

A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence could have been litigated in a prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex.1992).

The record reflects that with regard to the bankruptcy proceeding, the issue in that action was whether to allow the debtor—Madco—to sell off property in its bankruptcy estate to Head Oil. The validity of the transactions from which Madco purportedly attained its ownership interest in the leases, and whether it held valid title to the property, was not at issue. Rightful ownership of the property was not litigated in the bankruptcy proceeding.

With regard to the landowners' sale, nothing in the record reflects that the issue of Whitehead's true ownership of the property was, or need have been, litigated in that suit. Madco intervened, alleging ownership of the leases, and the trial court allowed the intervention. Madco's intervention was then severed out of the conversion suit before the jury trial commenced. The validity of the

1984 sale was not considered in that jury trial, the focus of which was Whitehead's alleged conversion of oil and gas. Nothing in the record reflects that the issue of Whitehead's rightful ownership of the property, particularly in relation to the validity of the 1984 foreclosure sale, was ever litigated between the parties.

Whitehead, as rightful owner of the property, had the right to bring an action to set aside the 1984 sale, cancel the trustee's deed, and regain his property. Instead, he acquiesced to the sale and did not contest Madco's asserted ownership of the title. As a result, the issue was never litigated. Durkay, as a party in privity with Whitehead and as one standing in his shoes, has since acquired the authority to set the sale aside. The issue of the validity of the 1984 foreclosure sale having never been litigated, the doctrine of *res judicata* will not apply to bar Durkay's action. Cross points one and two are overruled.

The trial court's judgment is reversed. The foreclosure sales are set aside, the deeds conveying them canceled, and the fourteen oil and gas leases returned to Durkay as the trustee of Whitehead's bankruptcy estate.

### OPINION ON MOTION FOR REHEARING

Both Appellant Durkay and Appellees William A. Tillman, Head Oil Production Co., and First Interstate Bank seek rehearing of this court's original disposition of this appeal. A Motion for Rehearing is granted, and upon reconsideration, the prior judgment of the court is withdrawn and the judgment of the court below is AFFIRMED.

This lawsuit was originally brought by Whitehead to recover oil and gas properties owned by him, or damages in lieu thereof, as a result of a wrongful foreclosure. Our original opinion describes the proceedings and history in detail. Mr. Whitehead eventually declared bankruptcy, and John Durkay, the bankruptcy trustee, intervened in this action seeking either to recover the property that he alleges was wrongfully foreclosed or, alternatively, to recover the value of the property. The jury trial resulted in a take nothing judgment.

Our original opinion reversed the judgment and held the initial foreclosure void and ordered the recovery of the properties to appellant, Durkay.

 Appellant Durkay, in his motion for rehearing, requests that this court clarify or correct its judgment "to provide that appellees are liable for the value of all property taken and for the estate's attorney fees." Some of his points on rehearing address our failure to rule on his points of error directed towards the damage findings by the verdict and the trial court's action on those findings. A party who has lost property through a wrongful foreclosure is entitled to either the property or its value, but not both. *Diversified Inc. v. Gibralter Sav. Ass'n*, 762 S.W.2d 620, 623 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *See University Savings Ass'n v. Springwoods Shopping Center*, 644 S.W.2d 705, 706 (Tex.1983); *Klein v. Garth*, 677 S.W.2d 712, 716 (Tex.App.—Tyler 1984, writ ref'd n.r.e.); *Owens v. Grimes*, 539 S.W.2d 387, 389–90 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). Durkay now seeks solely damages, abandoning his earlier request for the return of the properties. Our earlier decision is no longer dispositive, and we will address those points of error omitted from our original opinion because they were not dispositive.

I. Damages from Wrongful Foreclosure.

Appellant Durkay first complains that the failure of the jury to find damages as a result of the wrongful foreclosure is against the great weight and preponderance of the evidence, as well as not being supported by legally sufficient evidence, in points one and six.

Although the 1984 foreclosure was found to be wrongful, the jury found in question No. 2

---

1. QUESTION NO. 2
 If you have answered Question No. 1 "Yes" then answer the following question otherwise do not answer the following question.
 Find the amount of damages, if any, proximately caused by the wrongful foreclosure in 1984 on the Whitehead Oil and Gas leases.
 Answer in dollars and cents, if any.
 ANSWER: $ –0–
 You are instructed that the measure of damages is the difference between the fair market

---

that no damages resulted.[1] In Question No. 4 the jury found that the fair market value of the Whitehead oil and gas leases at the time of the 1984 foreclosure was $845,793.43 and in Question No. 5 found the balance on the promissory note secured by the Whitehead leases was $845,793.43 in February 1986.

 The measure of damages in wrongful foreclosure is the difference between the value of the property at the time of the wrongful foreclosure and the amount of the debt owed on that date. *Farrell v. Hunt*, 714 S.W.2d 298, 299–300 (Tex.1986). The plaintiff, having the burden to prove damages, must prove the amount of indebtedness at the time of the foreclosure; it is an integral part of his claim for damages. *Id.* The jury was not asked the amount of the debt at the time the wrongful foreclosure, 1984; rather, it was asked the balance on the note in February 1986. The answer is immaterial. It is not necessary to review the evidence for legal and factual sufficiency to support it.

In Question No. 2 the jury was properly instructed on the measure of damages for wrongful foreclosure. They answered that issue with "–0–". In Appellant's Motion for Rehearing, he complains by point of error No. 6 that the jury finding to Question No. 2 is both legally insufficient and factually insufficient.

 In order to decide the legal sufficiency point on which the complaining party had the burden of proof, we must conduct a two part analysis. First, we examine the record for evidence supporting the failure to find while ignoring all evidence to the contrary. If there is no evidence supporting the failure to find, then we examine the record to determine whether the proposition is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

value of the Whitehead Oil and Gas Leases at the time of their foreclosure and the outstanding balance on the Whitehead Promissory Note at the time of foreclosure.
 You are instructed that "fair market value" means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller, who desires to sell, but is under no necessity of selling.

Appellant, in the same point of error, asserts that the jury finding to Question No. 2 is factually insufficient. In order to determine whether the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, we review all the evidence. Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 359, 364 (1960). The trial below lasted more than three weeks and more than 100 exhibits were admitted. There is significant conflict in the evidence about the value of the Whitehead oil and gas leases and the balance due on the note. Both components must have been considered by the jury to determine what damages appellant incurred as a result of the wrongful foreclosure.

Testimony on the value of the properties varied widely. The Hardin report of October 1, 1985 estimates the oil and gas reserves on the 14 Jasper County leases at $13 million dollars. Tillman testified that Whitehead owed back taxes on the oil and gas leases at issue and that the tax lien would reduce the value of the property. Tillman further testified that he reviewed production records from the 14 oil and gas leases and determined that production, at the time of foreclosure, was "going down drastically." The value of the property was also reduced because of the pending litigation with the lessors over the Jasper County properties, and equipment had been removed from the leases.

Howard Lee Norris, an attorney who performed title work on the Whitehead lease in 1986 testified that the properties had IRS liens against them; there were some additional problems with the Railroad Commission on the properties for failing to comply with Railroad Commission regulations; the property title was also affected by the lawsuit filed by lessors against Whitehead and the subsequent receivership on some of the properties.

Whitehead testified that oil production from the leases in dispute totalled $4,322,-791.71 in 1982. The value of the Whitehead oil and gas leases, according to the evidence, ranged from $19,600,000 to nothing because of the title problems and various liens against it.

Testimony is also conflicting regarding the balance due on the note. There was testimony about a number of payments from Whitehead to Madco and credits by Madco in favor of Whitehead for payments from other sources. Tillman testified that $41,167.58 paid by Whitehead was not credited against the Whitehead promissory note to Madco but was instead paid to Allied Bank as credit against another debt owed by Whitehead. Tillman additionally testified that "Some payments were made under the promissory note." Tillman also testified that at the end of March 1984, Whitehead was approximately $38,000 in arrears to Madco on the Whitehead promissory Note. The total of Scurlock checks paid to Madco on Whitehead's behalf equal $282,619, which includes the disputed $41,167.58. Whitehead testified to payments and credits made against the note, but for each there was other testimony that disputed that those payments were to be credited against the Promissory Note to Madco.

Whitehead put on expert testimony of Evan Wathen, an accountant, who reviewed the note and payments made after the date of the note. Wathen testified that the balance due on the Whitehead Promissory Note at the time of foreclosure was $617,395. Mr. Wathen credits against the note shipments to Rebel Energy and the $41,000 payment. Those credits were in dispute. The note bore interest at approximately 15% annually.

Given the conflicting and confusing evidence, we cannot say that the jury's finding of zero damages is against the great weight and preponderance of the evidence. Applying the first prong of the *Sterner* test, we find evidence to support that finding.

Appellant's points of error one and six, complaining that the evidence is legally and factually insufficient to maintain the finding of zero damages resulting from the wrongful foreclosure, are overruled.

### Conversion

As part of appellant's claim for damages, he contends that he is entitled to the value of the oil production wrongfully taken from the

Whiteheads as a result of the 1984 fore-closure sale. He challenges the legal and factual sufficiency of the evidence supporting the jury's answer to Question No. 13. In that question, the jury found no damages proximately caused by the wrongful acts of conversion, if any, of the defendants. This is a single, broad issue that inquires whether there was a conversion, proximate cause, and damages.

■ Using the well established tests for legal sufficiency, although Whitehead and Durkay put on evidence of the value of the production after March/April 1984, the evidence was controverted by evidence put on by the defendants. The amount of production was not established as a matter of law and the evidence disputing the value of production was more than a scintilla. The direct evidence put on by the defendants indicated that production was declining in the months leading up to foreclosure and that after fore-closure there were significant problems on the properties that interfered with production. Even if we were to assume that the jury would have found that conversion occurred which was the proximate cause of damage, a finding of no damage is supported by legally sufficient evidence.

A complaint of factual sufficiency to support either a finding of no conversion, no proximate cause or no damage resulting from conversion must also fail. Evidence was put on by all parties of the amount of oil projected to be in the ground, the amount of production historically, the problems with the leases and metering and measuring of production both before and during the periods after

foreclosure. There was factually sufficient evidence to support the jury's decision not to find for appellant on Question No. 13. Appellant's points of error number one, two, three, and six are overruled.

## Conflicting Answers

■ Appellant next contends that the jury answers to Questions 2 and 4 are in irreconcilable conflict. In order to preserve error, the appellant must object to the conflict or inconsistency before the jury is discharged. *Greater Houston Transp. Co. v. Zrubeck*, 850 S.W.2d 579, 586 (Tex.App.—Corpus Christi 1993, n.w.h.); *Roling v. Alamo Group (USA), Inc.*, 840 S.W.2d 107, 109 (Tex.App.—Eastland 1992, writ denied), Tex.R.Civ.P. 295.[2] Appellant failed to preserve error by failing to object to the conflict or inconsistency prior to discharge of the jury.[3] Point of error number five is overruled.

## Exclusion of Evidence

■ By point of error number four, appellant complains of the exclusion of evidence of the value of the Whitehead oil and gas leases. Appellants offered the "Kheir Report" into evidence. The report purported to estimate the value of the Whitehead leases in Jasper County based on reserves. Appellant claims that the report substantiates a $39 million dollar valuation of the Whitehead lease properties.

The appellees objected on several grounds, including that the report was not properly authenticated. The court sustained all of the objections. Appellants offered the report as a party admission, claiming the report was

---

**2.** "If the purported verdict is defective, the court may direct it to be reformed. If it is incomplete, ... or the answers to the questions are in conflict, the court shall in writing instruct the jury in open court of the nature of the incompleteness, unresponsiveness, or conflict, provide the jury such additional instructions as may be proper, and retire the jury for further deliberations." *Id.* The court has a mandatory duty to retire the jury for further deliberations in the case of incomplete, unresponsive, or conflicting answers in the verdict according to the clear language of the rule. The court is not able to return the jury for further deliberations if the jury has previously been discharged. If the jury has been dis-

charged, the trial court has no opportunity to cure the problem.

**3.** The Court: It's a unanimous verdict.... Counsel, do you see any conflicts? Mr. Taylor [counsel for Defendants Head Oil Production Co. and Tillman] No. Your Honor. We pray the verdict be received. Mr. Gaultney: [Counsel for Plaintiff Durkay] I would like the opportunity to look at it, but I don't see anything just looking at it. The Court: I looked at it pretty carefully. I believe they have answered everything, and I didn't see anything that was obviously conflicting in the verdict. Is there any·objection if I discharge the jury? Mr. Taylor: No. Mr. Gaultney: None, Your Honor.

relied upon by various defendants prior to the 1984 foreclosure. Even if the report was admissible under TEX.R.CIV.EVID. 801(e)(2)(B), which was not established at trial, the report was still subject to the requirement of authentication. Mr. Kheir did not testify and no other witness testified to the completeness of the report, how it was prepared, its accuracy, or the basis for the calculations contained within it. The report is not a self authenticating document under the provisions of Rule 902 and must be authenticated in some other manner. It was not.

Failure to authenticate a document renders it inadmissible even if it otherwise is relevant and admissible. *See Castro v. Sebesta,* 808 S.W.2d 189, 195 (Tex.App.— Houston [1st Dist.] 1991, no writ); *City of Mesquite v. Moore,* 800 S.W.2d 617, 619 (Tex. App.—Dallas 1990, no writ).

Point of error number four is overruled.

The judgment of the trial court is AFFIRMED.